NORTHWOOD APARTMENTS v CITY OF ROYAL OAK

Docket Nos. 78-5034, 78-5035. Submitted April 3, 1980, at Detroit.—
Decided July 22, 1980.

Northwood Apartments, a partnership, petitioned the Michigan
Tax Tribunal for a review of the 1975 valuation of its apart-
ment complex and subsequently amended its original petition
to include tax years 1976, 1977, and 1978. Respondent City of
Royal Oak argued that the Tribunal lacked jurisdiction to
review the 1977 valuation due to petitioner's failure to protest,
and the Tribunal so ruled. The Tribunal reduced the valuations
of the property for the remaining years. Respondent School
District of the City of Royal Oak then filed a motion to
intervene which was denied by the Tribunal. Both the city and
the school district appeal; petitioner cross-appeals. *Held:*

1. The Tribunal did not commit an error of law or adopt a
wrong principle in determining the valuations of petitioner's
property.

2. Intervention in a proceeding before the Michigan Tax
Tribunal is discretionary with the Tribunal, and the Tribunal
did not abuse its discretion in denying the motion of the school
district to intervene since respondent's delay in filing the
motion after knowledge of the proceeding was unreasonable,
and no satisfactory excuse for the delay was shown.

3. Petitioner was not required to notify the school district of
the amendment to its original petition, and its failure to do so
was, thus, no jurisdictional bar to the Tribunal's consideration
of the assessments with respect to tax years 1977 and 1978.

4. The statutory requirement of protest to the local board of
review as a prerequisite to Michigan Tax Tribunal jurisdiction
is constitutional as applied to the petitioner, and the Tribunal's

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 820.
72 Am Jur 2d, State and Local Taxation § 787.
[2] 72 Am Jur 2d, State and Local Taxation § 753.
[3] 72 Am Jur 2d, State and Local Taxation § 1142.
[4] 72 Am Jur 2d, State and Local Taxation § 1141.
[5] 72 Am Jur 2d, State and Local Taxation § 802.
[6] 72 Am Jur 2d, State and Local Taxation § 1138.

determination that petitioner did not protest before the board in 1977 was without error.

Affirmed.

1. TAXATION — TAX TRIBUNAL — APPEAL — VALUATION — REAL PROPERTY — SCOPE OF REVIEW.

The Court of Appeals, in reviewing a valuation decision of the Michigan Tax Tribunal, is bound by the factual determinations of the Tribunal and is limited to questions of whether the Tribunal committed an error of law or adopted a wrong principle.

2. TAXATION — TRUE CASH VALUE — METHOD OF DETERMINATION — FAIR MARKET VALUE.

Any method for determining true cash value which is recognized as accurate and reasonably related to fair market valuation is an acceptable indicator of true cash value.

3. TAXATION — APPEAL — TAX TRIBUNAL — GOVERNMENTAL UNITS — RIGHT TO INTERVENE — STATUTES — DISCRETIONARY APPLICATION.

A governmental unit which receives tax funds from a petitioner who is appealing a property valuation by a local board of review before the Michigan Tax Tribunal does not, by statute, have an absolute right to intervene where the use of the word "may" in the language of the statute indicates that it is discretionary, absent other considerations which would compel a contrary conclusion (MCL 205.744; MSA 7.650[44]).

4. TAXATION — APPEAL — TAX TRIBUNAL — INTERVENTION — LIMITATIONS — UNREASONABLE DELAY — STATUTES.

There are no statutory limitations on the date of intervention in an appeal to the Michigan Tax Tribunal; however, an intervenor must be diligent, and any unreasonable delay after knowledge of the action will justify a denial of intervention where no satisfactory excuse is shown for the delay (MCL 205.744; MSA 7.650[44]).

5. TAXATION — ORIGINAL PETITIONS — TAX TRIBUNAL — NOTIFICATION OF LOCAL SCHOOL DISTRICTS — AMENDMENTS — STATUTES.

The statutory requirement that a local school district be notified of the filing of a petition with the Michigan Tax Tribunal relates only to original petitions and not to amendments to such petitions (1976 PA 365; MCL 205.735; MSA 7.650[35]).

6. TAXATION — PROTEST OF ASSESSMENT — TAXPAYER — APPEARANCE
   — STATUTES.
   A taxpayer does not satisfy the statutory requirement of protest
   of assessment of property by appearing when the local board of
   review is hearing another case and seeking to be heard immedi-
   ately (MCL 211.30; MSA 7.30).

*Hyman, Gurwin, Nachman, Friedman & Winkle-
man* (by *Thomas J. Beale*), for petitioner.

*Shifman & Goodman, P.C.* (by *David M. Black*),
and *Daniel Sawicki*, City Attorney, for respon-
dents.

Before: J. H. GILLIS, P.J., and ALLEN and BEAS-
LEY, JJ.

J. H. GILLIS, P.J. The City of Royal Oak and the
School District of Royal Oak appeal as of right[1]
from two decisions of the Michigan Tax Tribunal.
Petitioner cross-appeals raising a completely sepa-
rate issue.

The property involved here is a 121-unit apart-
ment complex. The dispute centers on the valua-
tion placed on that property by the respondent
City of Royal Oak (hereinafter referred to as
"City"). The tax years involved are 1975, 1976,
1977, and 1978. For those years, the City appraised
the property at true cash values of $1,610,000,
$1,610,000, $1,708,000, and $2,058,017 respectively.

In 1975, Northwood petitioned the Tax Tribunal
for a review of the 1975 valuation of the apart-
ment complex. Subsequent thereto, the original
petition was amended for purposes of including tax
years 1976, 1977, and 1978. At the commencement
of the hearing on the petition, the City argued
that Northwood had failed to protest the 1977

[1] See *CAF Investment Co v Saginaw Twp*, 79 Mich App 559; 262
NW2d 863 (1977), MCL 205.753; MSA 7.650(53).

valuation before the City's board of review and that, accordingly, the Tax Tribunal was without jurisdiction to review the valuation as to that year. MCL 205.737(4); MSA 7.650(37)(4). The Tribunal took preliminary testimony on the issue and ruled that petitioner had not made a sufficient showing of protest to the local board of review and that, therefore, the Tribunal lacked jurisdiction as to the 1977 valuation. This ruling is the subject of petitioner's cross-appeal and will be discussed further in this opinion.

The Tribunal then considered the valuations for the remaining years. In a September 11, 1978, opinion, the Tribunal reduced the valuation of the property as follows: 1975—$1,250,000, 1976—$1,250,000, and 1978—$1,500,000. Judgment was entered pursuant to that opinion on the same date. On September 29, 1978, the respondent School District of the City of Royal Oak (hereinafter referred to as "School District") filed a motion to intervene. This motion was denied in an order dated November 9, 1978. That denial together with the Tribunal's reductions of valuation is the subject of respondents' joint appeal.

At the outset, we emphasize that this Court's authority to review a valuation decision of the Tax Tribunal is very limited. We are bound by the factual determinations of the Tribunal. *Ironwood v Gogebic County Board of Comm'rs,* 84 Mich App 464, 469; 269 NW2d 642 (1978). Where, as here, no fraud is alleged, our review is limited to the questions of whether the Tribunal committed an error of law or adopted a wrong principle. *Consolidated Aluminum Corp, Inc v Richmond Twp,* 88 Mich App 229, 231; 276 NW2d 566 (1979), *Consumers Power Co v Port Sheldon Twp,* 91 Mich App 180, 184; 283 NW2d 680 (1979), Const 1963, art 6 § 28.

For the purposes of taxation, property is to be assessed in accordance with its true cash value. Const 1963, art 9, § 3, *Ramblewood Associates v Wyoming,* 82 Mich App 342, 344; 266 NW2d 817 (1978). True cash value is defined as: "[T]he usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price which could be obtained for the property at private sale, and not at forced or auction sale." MCL 211.27; MSA 7.27. The legislative test, however, is not exclusive. *Consumers Power Co v Big Prairie Twp,* 81 Mich App 120, 129; 265 NW2d 182 (1978), *lv den* 403 Mich 848 (1978).

The concept of true cash value is synonymous with fair market value. *CAF Investment Co v State Tax Comm,* 392 Mich 442, 450; 221 NW2d 588 (1974). Any method for determining true cash value which is recognized as accurate and reasonably related to fair market valuation is an acceptable indicator of true cash value. *Safran Printing Co v Detroit,* 88 Mich App 376, 380; 276 NW2d 602 (1979).

The parties, as well as the Tribunal, agree that the capitalization of income method is the proper valuation method to be utilized here. We concur. The property in question is income-producing property. The capitalization of income method is the "method which is most appropriate to the individual case as the particular facts may indicate". *Consumers Power Co, supra,* 130. See *CAF Investment Co, supra.*

The capitalization of income method is based on the premise that there is a relation between the income a property can earn and the value of that property. This method estimates the present value of the amount of net income the property is ex-

pected to generate over its remaining useful life. Two techniques by which to apply this method are available. One is the annuity capitalization technique. An explanation of this technique is detailed in *Consumers Power Co, supra,* 134. This technique simply discounts the total of all future income. In the present case, one cannot accurately estimate the total of future income. Market factors affecting the desirability of the apartments in question render an estimate of future income necessarily speculative. Accordingly, the Tax Tribunal properly declined to utilize this technique.

A second technique for determining this value involves dividing the net income by the capitalization rate. We find this technique superior, under the facts of the present case, because it reflects actions of typical buyers and sellers in the current local market. The dispute here centers on the formula by which the capitalization rate was calculated.

The City contends that the rate is properly determined by comparing abstracted overall capitalization rates from similar properties. The petitioner contended and the Tribunal agreed that the mortgage-equity formula is properly applied. We note that this formula is also known as the band-of-investment formula.

The City's formula divides the net income of comparable properties by the fair market value (sale price) of those properties to compute a capitalization rate. The problem with this method lies in finding comparable properties. A small difference in the comparable property and the property in question will be reflected in the final estimate of fair market value.

The mortgage-equity formula, on the other hand, reflects a rate which accounts for changes in

interest rates, mortgage terms, and cash flow requirements. This formula utilizes comparable properties only for the purpose of determining the cash flow rate. This rate is but one of several components in the formula. Hence, any difference between the comparables and the property in question will effect a smaller error in the estimate of fair market value. For these reasons we conclude that the Tribunal properly utilized the mortgage-equity formula to determine the capitalization rate. It cannot be said that the Tribunal committed an error of law or adopted a wrong principle in utilizing this formula.

The City also contends that the Tribunal erred in permitting the petitioner to deduct its actual expenses in calculating net income. The City argues that an expense ratio based on market data should have been utilized. The contention is factually and legally erroneous.

An examination of the Tribunal opinion, see *infra,* discloses that petitioner's actual expenses were adjusted downward. The claim that petitioner was allowed to deduct those actual expenses in calculating net income is, thus, factually in error. Furthermore, even had those expenses been allowed in full, such allowance would have been proper. MCL 211.27; MSA 7.27, requires that in determining value the "present economic income" of structures shall be considered. Economic income as used in the statute means actual income. *CAF Investment Co, supra,* 454. Since expenses are but elements of net income, we conclude that actual expenses may properly be utilized.

The City next contends that the Tribunal erred in permitting reserves for the replacement of capital items to be deducted as an expense item. The

contention is without merit. By statute, the assessor must use the state tax assessor's manual as a guide in assessing property. MCL 211.721; MSA 7.40. Reserves for replacement are expressly allowed as an expense in the manual. Michigan State Tax Comm, *Assessor's Manual* (1972), ch. 10, Capitalization of Income: The Income Approach Applied to an Apartment Building, p 3. See also, American Institute of Real Estate Appraisers, *The Appraisal of Real Estate* (Chicago: Am Inst of Real Estate Appraisers, 7th ed, 1978).

The City next contends that the Tribunal failed to make sufficient findings of fact concerning petitioner's expenses. We disagree.

Section 51 of the Tax Tribunal Act, MCL 205.751; MSA 7.650(51), and § 85 of the Administrative Procedures Act, MCL 24.285; MSA 3.560(185), made applicable to the Tribunal by MCL 205.726; MSA 7.650(26), require the Tribunal to state the factual and legal basis for its decisions in order to facilitate appellate review. *Almira Twp v Benzie County Tax Allocation Board,* 80 Mich App 755, 760-761; 265 NW2d 39 (1978).

In the present case, the Tribunal found that:

"* * *[T]he Tribunal is not convinced that the allowable expenses contended by Petitioner are fully justifiable and has therefore adjusted them downward in arriving at its finding of true cash value."

Under the circumstances of the present case, we deem this finding adequate for appellate review. With respect to expenses, the City contests only the Tribunal's propriety of permitting the deduction of actual expenses in calculating net income. This we have found to be proper. See *supra.* The City does not contest the reasonableness of the amount of expenses allowed. Accordingly, a specifi-

cation as to the amount by which each expense was reduced is not essential to our review. Furthermore, the Tribunal's determination in this regard is one of fact. We are bound by that determination. *Consolidated Aluminum, supra,* 231-232.

The respondent School District contends that the Tax Tribunal erred in denying its motion to intervene. It is contended that the motion should have been granted as of right and, in the alternative, that the Tribunal abused its discretion in denying the motion.

MCL 205.744; MSA 7.650(44), provides in relevant part:

"* * * the tax tribunal may permit the intervention or impleading of any governmental unit which receives tax funds from the petitioner who is making the appeal."

Unless other considerations compel a contrary conclusion, the use of the word "may" indicates that the statute is discretionary. *Law Dep't Employees Union v City of Flint,* 64 Mich App 359, 368; 235 NW2d 783 (1975). Respondent having failed to cite to this Court any "other considerations" which compel a contrary conclusion, we hold that the statutory language does not create an absolute right to intervene on the part of the School District.

No time limitations on the date of intervention are set forth in MCL 205.744; MSA 7.650(44). See *Consumers Power Co, supra,* 159. However, an intervenor must be diligent, and any unreasonable delay after knowledge of the action will justify a denial of intervention where no satisfactory excuse is shown for the delay. *School Dist of the City of Ferndale v Royal Oak Twp School Dist No 8,* 293 Mich 1, 10-11; 291 NW 199 (1940).

In the present case, the School District was aware that the taxpayer had filed a petition concerning its 1975 assessment by virtue of communications with the City. The School District, nevertheless, waited approximately three years to file its motion to intervene. Furthermore, that motion was filed four months after the Tribunal hearing and two and one-half weeks after the Tribunal's judgment was entered. We find that this constitutes an unreasonable delay sufficient to justify the Tribunal's denial of the motion. The School District proffers as an excuse its asserted unawareness of the magnitude of the action because it was unaware that the appeal also affected the 1976, 1977, and 1978 tax years. See *infra.* We are unpersuaded by this excuse. It was patently foreseeable that petitioner's appeal of the 1975 assessment would affect future years' tax liability as well. The Tribunal did not abuse its discretion in denying the motion to intervene.

The respondents lastly contend that petitioner's failure to serve the School District with copies of its motions to amend its petition so as to add the tax years 1977 and 1978 constituted a jurisdictional bar to the Tribunal's consideration of the assessments with respect to those years. We disagree.

Petitioner filed its original petition with the Tax Tribunal on May 1, 1975. Its motion to amend that petition to include the 1976 tax year was filed on May 18, 1976. The motion to include the 1977 tax year was filed on June 6, 1977. The 1978 motion was filed on May 16, 1978. The motions to amend were granted by the Tribunal.

At the time of the filing of the original petition, § 35 of the Tax Tribunal Act, MCL 205.735; MSA 7.650(35), did not require that a copy of the pe-

tition be sent to the local school district. 1976 PA 365, effective December 23, 1976, amended § 35 so as to require that a copy of the *petition* be sent to the local school district. Respondents claim that the amendment of a petition to add a subsequent tax year is tantamount to the commencement of a new proceeding and that, accordingly, a copy of the motion to amend the petition must be sent to the local school district.

The issue presented is whether the 1976 amendment to § 35 which requires that the local school district be notified of the filing of the petition with the Tribunal similarly requires that the district be notified of the filing of motions to amend that petition so as to include subsequent tax years. The answer is that it does not. The notification provision relates only to original petitions and not to amendments to such petitions.

We reach this conclusion for the following reasons:

1) Sections 35(4), MCL 205.735(4); MSA 7.650(35)(4), and 37(4), MCL 205.737(4); MSA 7.650(37)(4), of the Tax Tribunal Act provide that a petition may be amended. Neither section requires notice to a school district of an amendment. The statutory language, thus, supports our conclusion. Had the Legislature intended that notification to the local school district of amendments be required, it could have amended these sections at the same time that it enacted 1976 PA 365 to effect this contended requirement. We choose not to create a statutory requirement by inference.

2) The express statutory procedure for amending its petition was followed by the taxpayer.

3) The Tribunal construed the above statutory sections as not requiring notification of amendments. As the Tribunal is the agency charged with

administering the act, its interpretation is entitled to be accorded appropriate weight by this Court. *Roosevelt Oil Co v Secretary of State,* 339 Mich 679; 64 NW2d 582 (1954), *Miller v Dunn Paper Co,* 47 Mich App 471; 209 NW2d 519 (1973), *Wemmer v National Broach & Machine Co (After Remand),* 89 Mich App 312, 320-321; 280 NW2d 845 (1979).

Petitioner, by way of cross-appeal, raises two additional issues. Petitioner first contends that the statutory requirement of protest to the local board of review, MCL 205.735; MSA 7.650(35), MCL 205.737; MSA 7.650(37), as a prerequisite to Tax Tribunal jurisdiction is unconstitutional as a denial of due process of law. The argument, basically, is that the protest requirement is unconstitutional because the assessment is only tentative at the time the local board of review meets. The assessment may be altered by application of county and state equalization processes. The application of these processes occurs after the time for a protest before the local board of review has passed. Therefore, it is claimed that, if a taxpayer is forced to decide whether or not to protest his assessment before that assessment is final, a violation of due process has been established.

For the purpose of the instant case, the validity or invalidity of petitioner's argument need not be addressed. Here, petitioner is not objecting to an assessment which has been increased by application of either equalization process. Rather, petitioner claims only that the City's assessment for each of the respective tax years exceeded 50% of the property's true cash value in contravention of Const 1963, art 9, § 3. The information required in order to decide whether or not the City's assessment should be appealed was available to the taxpayer prior to the time required for protest to

the local board of review. Accordingly, the statutory requirement of protest to the local board of review is constitutional as applied to the petitioner.

Having concluded that the statutory requirement of a protest to the local board of review is constitutional as applied to the petitioner, we next consider whether the Tribunal properly determined that petitioner's actions in 1977 did not constitute a protest before the board of review.

Petitioner's managing partner, Joseph Dresner, testified that in 1977 he received a notice from the City setting forth the days on which the board of review would meet. He testified that he went to the Royal Oak City Hall where the board of review was meeting on one of the days stated in the notice. Mr. Dresner requested the opportunity to address the board but was told that the agenda for that day was full. He was given an appointment to meet with the board on March 28, 1977. On or just prior to March 28th, Mr. Dresner determined that he would be unable to appear in person. He therefore prepared a letter of protest, MCL 211.30; MSA 7.30, and directed a member of his staff to deliver it to the board. No personal appearance was made on behalf of the petitioner on March 28, 1977. The Tribunal found that there was insufficient evidence to indicate that the letter of protest was received and concluded that, therefore, it lacked jurisdiction as to the 1977 valuation.

Initially, we note that the petitioner does not contest the factual determination that the letter was not shown to have been delivered. The question presented is whether Mr. Dresner's initial personal appearance was a sufficient protest. We find that it was not.

MCL 211.30; MSA 7.30, and MCL 211.3a; MSA

7.30(1), provide that the local board of review shall, for the purpose of reviewing assessments, meet on the first Monday in April. In the present case, the board of review met on March 14, 1977, and continued in session until April 7, 1977. The statutory meeting requirement was thus met.

The problem here is that it is undisputed that the petitioner did go to the place where the board was meeting for the purpose of protesting the 1977 assessment but, due to the number of assessments being protested, was unable to address the board. Petitioner was given an appointment which was not kept. Do these facts constitute a sufficient protest? We think not.

Here, the board of review was in session during the statutorily required period. However, because of the volume of assessment protests, the board had to schedule appointments to accommodate all protesting taxpayers. Petitioner was given an appointment but failed to attend on the appointed date. Under these circumstances, we hold that the petitioner did not protest to the board of review. One cannot satisfy the requirement of protest by appearing when the board is hearing another case and seeking to be heard immediately. Furthermore, the board is not required to seek out a taxpayer who chooses not to keep his appointed date. The Tribunal's determination that petitioner did not protest before the local board of review in 1977 so as to invoke the Tribunal's jurisdiction as to that tax year was without error.

Affirmed.