PRESQUE ISLE HARBOR WATER COMPANY v PRESQUE ISLE
TOWNSHIP

Docket No. 59316. Submitted November 10, 1982, at Lansing.—Decided June 17, 1983.

Presque Isle Township valued property belonging to Presque Isle Harbor Water Company at true cash values of $1,240,000 and $2,714,000 for the tax years of 1980 and 1981, respectively. The property involved is a water supply system consisting of pipes, hydrants, valves, fittings, pumps, tanks and well containment buildings on land owned by the water company's parent corporation, American Central Corporation. The water system was constructed solely to allow American Central to subdivide a vast portion of undeveloped property. Once the water system enabled American Central to subdivide the land, it no longer had any value apart from what it could earn on its own. The water company petitioned the Michigan Tax Tribunal to review the assessment. The Tax Tribunal modified the true cash value of the property to $670,000 for the tax year 1980 and $2,080,-000 for the tax year 1981. The water company appealed. *Held:*

1. The Tax Tribunal adopted a wrong principle in applying the replacement cost method supplemented by available income data in determining the true cash value of the water system. The proper method of assessing income-producing property is the capitalization of income approach.

2. The case is remanded to the Tax Tribunal for application of the capitalization of income approach to the water supply system. An evidentiary hearing should be conducted to determine the maximum potential income-producing capacity of the property for purposes of determining its usual selling price.

Reversed and remanded.

1. Taxation — Assessment — True Cash Value — Constitutional Law.

Property is to be assessed according to its true cash value for purposes of taxation (Const 1963, art 9, § 3).

References for Points in Headnotes
[1] 71 Am Jur 2d, State and Local Taxation §§ 125-127.
[1-4] 72 Am Jur 2d, State and Local Taxation § 753 *et seq.*
[5] 72 Am Jur 2d, State and Local Taxation §§ 713, 787, 796.
[6, 7] 72 Am Jur 2d, State and Local Taxation §§ 761, 762.

2. Taxation — Assessment — True Cash Value — Fair Market
   Value.

   The standard for determining the true cash value of property for
   purposes of taxation is the usual selling price or fair market
   value of the property (MCL 211.27; MSA 7.27).

3. Taxation — Assessment — True Cash Value — Fair Market
   Value.

   Any method for determining true cash value which is recognized
   as acceptable and reasonably related to fair market valuation is
   an acceptable indicator of true cash value of real property.

4. Taxation — Assessment — True Cash Value.

   Five acceptable methods for determining true cash value of
   property for tax assessing purposes are: (1) actual cash value
   ascertained by the current selling price of the property or
   comparable property at a private sale after negotiations; (2)
   adjusted reproduction cost method; (3) capitalization of income
   method; (4) depreciated net cost (book value); and (5) a compari-
   son method, which involves a determination of the depreciated
   construction cost of equivalent buildings and facilities.

5. Taxation — Assessment — Tax Tribunal.

   The Michigan Tax Tribunal has a duty to adopt an assessment
   method which is most appropriate to the case before it as the
   particular facts indicate, and the assessment will not be suscep-
   tible to attack unless fraud, error of law, or adoption of the
   wrong principles is shown.

6. Taxation — Assessment — Income Producing Property — Capi-
   talization of Income.

   The proper method of assessing income-producing property is the
   capitalization of income approach; the approach is based on the
   premise that there is a relation between the income a property
   can earn and the value of that property and estimates the
   present value of the amount of net income the property is
   expected to generate over its remaining useful life.

7. Taxation — Assessment — Income Producing Property — Capi-
   talization of Income.

   There are two techniques by which to apply the capitalization of
   income method to determine the true cash value of income-
   producing property for purposes of taxation; one is the annuity
   capitalization technique, which simply discounts the total of all
   future income, and the other technique involves dividing the
   net income by the capitalization rate.

*Honigman, Miller, Schwartz & Cohn* (by *Charles H. Tobias),* for petitioner.

*Gillard, Bauer & Mazrum* (by *James L. Mazrum),* for respondent.

Before: T. M. Burns, P.J., and Beasley and K. N. Hansen,* JJ.

Per Curiam. Petitioner, Presque Isle Harbor Water Company, appeals as of right from a decision of the Michigan Tax Tribunal. The property involved here is a water supply system (pipes, hydrants, valves, fittings, pumps, tanks and well containment buildings) on land owned by petitioner's parent corporation, American Central Corporation. The dispute focuses on the valuation placed on that property by respondent, Presque Isle Township, for the tax years 1980 and 1981. For those years, respondent appraised the subject property at true cash values of $1,240,000 and $2,714,000, respectively. On July 23, 1981, the Tax Tribunal modified the true cash value of the property to $670,000 for the tax year 1980 and $2,080,-000 for the tax year 1981.

A review of the record discloses the following chronology. In 1968, American Central Corporation[1] purchased land in Presque Isle Township for approximately $800,000 to develop into a residential-recreational subdivision known as Presque Isle Harbor. Subsequent to the purchase of the undeveloped land, American Central divided the area into 12 subdivisions containing a total of 3,100 lots. When American Central attempted to record the plats for development in 1970, it was advised by the Michigan Department of Health that a

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Since 1968, American Central Corporation has been a wholly owned subsidiary of International Paper Company.

water supply system or a sewage system would be required before the land could be subdivided. Thereupon, American Central immediately incorporated petitioner, Presque Isle Harbor Water Company, as a separate company with $50,000 in capital stock and a $2.7 million long-term loan.

At the time that American Central established petitioner, it intended petitioner to be an independent entity that would, at a minimum, break even financially. Nevertheless, the water company was formed initially in order for the parent firm to be able to subdivide the purchased land.

In 1978, petitioner decided to complete the water system earlier than required in order to avoid soaring construction costs. This decision was made despite the fact that, predicated upon the prior sales of the subdivision lots, the water system could not be effective for several years. By its accelerated construction of the water system, petitioner also sought to collect "availability" fees from lot owners to whom the system would be available.

The entire water supply system was completed in 1980 at a total cost of $2.5 million. Petitioner offered to donate the system to the county or township, along with $500,000 to complete a water tower and reservoir, but both entities rejected the offer.

Petitioner's evidence at the hearing established that, under existing conditions, there was no prospect of the water system's being profitable, since the fees charged to the lot owners did not equal the cost of producing the water.[2]

---

[2] The water system was unprofitable despite petitioner's having the benefit of its overhead and administrative costs paid for by its parent, American Central Corporation. Additionally, owners of most of the houses in the development were bound by restrictive covenants to pay the water fees.

While the project potentially could earn money if fees were increased to exceed costs, petitioner had not petitioned the Public Service Commission for an increase. Petitioner had considered the possibility of obtaining a fee increase, but rejected it in view of its collection problems.[3]

Petitioner's testimony also established that the $2.5 million it spent for the installation of the water supply system was recovered through the sale of the subdivision lots. However, as the following colloquy shows, the increase in the value of the land went to American Central, rather than petitioner:

*"McDonald [Tax Tribunal Judge]:* Where is the gain on the sale of the land or is there no gain?

*"Dratman [Tax Manager, American Central]:* Well, whatever gain there is on the sale of land is properly reflected on the books of American Central Corporation, the fee owner of the property.

*"McDonald:* Correct. And in the consolidated statement it would appear as gain, would it not?

*"Dratman:* It would appear as income, yes sir."

To support its position that the subject property had a true cash value of zero for 1980 and $250,000 for 1981, petitioner presented the expert testimony of Roland Dean Nelson, the principal owner of Dean Appraisal Company. While considering three appraisal methods, Nelson concluded that the capitalization of income approach was the most accurate appraisal method because he viewed the property to be income producing with an income stream. Nelson described capitalization of income as "the present worth of the future bene-

[3] At the time of the hearing, less than five percent of the 2,950 lots that were sold were occupied by their owners.

fits by capitalizing the stream of income that the property will produce in the foreseeable future".

Nelson expressed an opinion that the subject property had true cash values of zero as of December 31, 1979, and $250,000 as of December 31, 1980. He based his opinion on the price he believed the property would sell for on the open market. He further testified that, even though the water supply system had no or minimal value in 1979 and 1980, the value of the 3,100 lots owned by American Central Corporation was increased by the existence of the water system.

Disagreeing significantly with Nelson's appraisal was respondent's expert witness, John Burdett, the Presque Isle Township assessor. Burdett rejected the income approach used by Nelson in appraising the water system since: (1) he did not know whether investors purchased commercial property based on the property's income-producing capability or on the replacement cost thereof, (2) he could not locate any property comparable to the water system, and (3) petitioner had not sought an increase in the rates it charged its customers. However, Burdett agreed that petitioner's property was income producing and that prospective purchasers would consider the potential income in determining the amount to pay. Furthermore, he conceded that he did not attempt to ascertain the water system's earnings potential.

In concluding that the true cash value of the subject property was $1,050,000 for the tax year 1980 and $2,730,000 for the tax year 1981, Burdett applied a cost approach, using historical data raised to current replacement values.

In its written opinion, the Michigan Tax Tribunal made the following pertinent findings of fact: (1) the proofs clearly showed that the only reason

the water system was installed was to enable petitioner's parent firm, American Central Corporation, to develop the land; (2) exclusive reliance on the capitalization of income approach was not justified because cost data was available; (3) petitioner probably would not realize a profit from the system, but this was not relevant, since the system was erected as part of the overall American Central plan; (4) petitioner was not exempt from taxation solely because the water system may have enhanced the value of the lots; (5) respondent's cost approach did not allow the tribunal to determine the property's usual selling price; and (6) respondent improperly rejected information relating to water systems of other states in appraising the property.

After summarizing the testimony and making findings of fact, the Tax Tribunal concluded:

"There is little question but what the subject property is unique and presents difficult challenges to both parties in attempting to value it, or to find for such an atypical property the 'usual' selling price required by Michigan law. The problem is ornery, and it becomes no less so when the tribunal is confronted with its statutory obligation to provide a solution.

"Having considered all of the evidence, determining what weight and credibility should be given it, and in particular recognizing appropriate cost and income data available to it, the tribunal finds the true cash value of the subject property to be $670,000 for the tax year 1980 and $2,080,000 for the tax year 1981; applying the average levels of assessments of 50% for both years results in revised assessments (as opposed to the actual assessments on the rolls) as follows:

| "Tax Year | Assessments on Rolls | Revised Assessments |
|-----------|----------------------|---------------------|
| 1980      | $  620,000           | $  335,000          |
| 1981      | 1,357,000            | 1,040,000"          |

On appeal, petitioner maintains that the Tax Tribunal failed to consider the only testimony concerning the usual selling price of the subject property and arrived at an arbitrary assessment unsupported by the record. Petitioner asserts that the Tax Tribunal should have equated the water supply system to a permit which a developer must purchase in order to develop property, since after the development of the land is completed, the permit must be evaluated on its own.

Respondent argues that the testimony of petitioner's expert witness is not binding on the Tax Tribunal and, in fact, was contradicted by the testimony of respondent's appraiser. Respondent also contends that the tribunal correctly rejected the capitalization of income approach in appraising the usual selling price of the subject property.

Appellate review of Tax Tribunal decisions is circumscribed by Const 1963, art 6, § 28, which provides:

"In the absence of fraud, error of law or the adoption of wrong principles, no appeal may be taken to any court from any final agency provided for the administration of property tax laws from any decision relating to valuation or allocation."

For the purposes of taxation, property is to be assessed according to its true cash value.[4] Under MCL 211.27; MSA 7.27, the standard for determin-

[4] Const 1963, art 9, § 3; *Cleveland Cliffs Iron Co v Republic Twp,* 196 Mich 189, 199; 163 NW 90 (1917); *First Federal Savings & Loan Ass'n of Flint v Flint,* 415 Mich 702, 704-705; 329 NW2d 755, 757 (1982).

ing the true cash value is the usual selling price or fair market value of the property.[5] Any method for determining true cash value which is recognized as acceptable and reasonably related to fair market valuation is an acceptable indicator of true cash value of real property.[6]

In the within matter, the Tax Tribunal was faced with appraising nearly unique property; namely, a water system which was installed solely to allow the owner of a vast portion of undeveloped land to subdivide the area. Although the water supply system enhanced the value of the developer's land by enabling it to obtain approval from the Michigan Department of Health to build homes thereon, the system itself was operated at a loss and probably will not ever realize a profit. In fact, petitioner's attempts to donate the system to the township and county were unavailing. Consequently, a reliable and fair appraisal method must be applied to determine the true cash value of the novel property.

In *Consumers Power Co v Big Prairie Twp,*[7] we enumerated five acceptable methods for determining true cash value of property for tax assessing purposes: (1) actual cash value ascertained by the current selling price of the property or comparable property at a private sale after negotiations; (2) adjusted reproduction cost method; (3) capitalization of income method; (4) depreciated net cost (book value); and (5) a comparison method, which

___

[5] Unlike stocks traded on a national stock exchange, the fair market value of real property is often difficult to determine. In MCL 211.27; MSA 7.27, the Legislature enumerated a list of factors, such as zoning, quality of soil, advantages and disadvantages of location, or current economic income of structures, to be used as guidelines in an attempt to determine the fair market value of a piece of property.

[6] *CAF Investment Co v State Tax Comm,* 392 Mich 442, 450, fn 2; 221 NW2d 588 (1974).

[7] 81 Mich App 120, 130; 265 NW2d 182, *lv den* 403 Mich 848 (1978).

involves a determination of the depreciated con-
struction cost of equivalent buildings and facilities.
It is the duty of the Tax Tribunal to adopt an
assessment method which is most appropriate to
the case before it as the particular facts indicate.[8]
An assessment will not be susceptible to attack
unless fraud, error of law, or adoption of the
wrong principles is shown.[9]

The recent case of *Safran Printing Co v Detroit*[10]
concerned the assessment of a unique piece of
property. There, the property at issue was a seven-
acre parcel of land that housed a large structure
which the plaintiff operated as a printing plant. It
was undisputed that the plant was obsolete, ineffi-
cient, and could not be sold as a printing plant.
The plaintiff did not seek a new location because
of exorbitant relocation costs. Expert testimony
established that, if the subject property were sold,
it would likely be sold as a warehouse.

While finding that the property was unique, the
Tax Tribunal rejected the market value as the
measure of the true cash value and instead as-
sessed the true cash value on the basis of the
property's existing use as a printing plant, which
it also determined to be the property's best and
highest use. In reversing the decision of the Tax
Tribunal, the *Safran* Court held that fair market
value is determinative of true cash value:

"The fact that Safran does not intend to sell is of no
relevance for it is the duty of the tribunal to hypothes-

[8] *Pantlind Hotel Co v State Tax Comm,* 3 Mich App 170, 176-177;
141 NW2d 699 (1966), *aff'd* 380 Mich 390; 157 NW2d 293 (1968).

[9] *Fisher-New Center Co v State Tax Comm,* 380 Mich 340, 352-353;
157 NW2d 271 (1968), *rev'd on reh on other grounds* 381 Mich 713;
167 NW2d 263 (1969); *Tatham v Birmingham,* 119 Mich App 583, 589;
326 NW2d 568 (1982).

[10] 88 Mich App 376; 276 NW2d 602 (1979), *lv den* 411 Mich 880
(1981).

ize the highest probable price at which a sale would take place.

"By expressly rejecting the usual selling price or fair market value standard and attributing a significant amount of value to the existing use of the property where such use bears no relationship to what a likely buyer would pay for the property, the tribunal used a wrong principle of evaluation.

\* \* \*

"The case is remanded for a determination of the price the property would most likely bring if it were put upon the market. This is the 'true cash value'."[11]

It is apparent in the within matter that the Tax Tribunal applied the replacement cost method supplemented by available income data in determining the true cash value of petitioner's property. In our view, the assessment method employed by the Tax Tribunal constituted the adoption of a wrong principle. Once the water supply system enabled American Central Corporation to subdivide the land, it no longer had any value apart from what it could earn on its own. The water supply system cannot be assessed as though it were worth the money required to replace it, since the sole reason it was installed, namely, to subdivide the land, had already been accomplished.

The appraisers of both petitioner and respondent testified that the property was income producing and that prospective investors would consider the potential income generated by the system in deciding upon a purchase price.

In *Northwood Apartments v Royal Oak,*[12] we held that the proper method of assessing income-producing property is the capitalization of income

[11] 88 Mich App 376, 382-383.
[12] 98 Mich App 721, 725; 296 NW2d 639 (1980).

approach. Therein, we described this method for determining true cash value:

"The capitalization of income method is based on the premise that there is a relation between the income a property can earn and the value of that property. This method estimates the present value of the amount of net income the property is expected to generate over its remaining useful life. Two techniques by which to apply this method are available. One is the annuity capitalization technique. An explanation of this technique is detailed in *Consumers Power Co, supra,* 134. This technique simply discounts the total of all future income. In the present case, one cannot accurately estimate the total of future income. Market factors affecting the desirability of the apartments in question render an estimate of future income necessarily speculative. Accordingly, the Tax Tribunal properly declined to utilize this technique.

"A second technique for determining this value involves dividing the net income by the capitalization rate."[13]

We note that the Tax Tribunal did not specifically reject petitioner's market data which indicated that other water supply systems sold for approximately six percent of the construction costs.

We conclude that the Tax Tribunal adopted a wrong principle by basing its assessment of the subject realty on the amount once expended to construct the system.[14] If petitioner could not have sold the system for $2.1 million, that amount was

[13] 98 Mich App 721, 725-726. For a comprehensive analysis of the capitalization of income procedure, see Anno: *Income or rental value as a factor in evaluation of real property for purposes of taxation,* 96 ALR2d 666, 713-717. Also, see 72 Am Jur 2d, State and Local Taxation, §§ 761-762, pp 85-86.

[14] The cost of reproduction less depreciation method is most appropriate for industrial facilities for which no market, an inadequate market, or a distorted market exists. *Tatham, supra,* p 591.

not the usual selling price for the property. The record clearly reveals that a purchaser would be interested in the water supply system for its income-producing capacity rather than the cost required to construct such a facility.

Consequently, we remand this matter to the Tax Tribunal for application of the capitalization of income approach to the water supply system. An evidentiary hearing should be conducted to determine the maximum potential income-producing capacity of the property for purposes of determining its usual selling price.