XEROX CORPORATION v OAKLAND COUNTY

Docket No. 81086. Submitted March 11, 1986, at Lansing. Decided
February 17, 1987. Leave to appeal applied for.

Xerox Corporation petitioned the Michigan Tax Tribunal for a
determination of the valuation methodology to be used for the
1980, 1981 and 1982 tax years to determine the true cash value
of certain leased copier and duplicator machines located in
respondent local assessing units, Oakland County and City of
Grand Rapids. The tribunal, in an opinion and partial judg-
ment, adopted a modified version of respondents' market ap-
proach to value for ad valorem taxation purposes instead of the
capitalization-of-income method proposed by petitioner. The
tribunal held in abeyance the remaining issues of discrimina-
tion and exemption pending the redetermination of true cash
value and lawful assessments by respondents using the tribu-
nal's market approach, which took the published Xerox cata-
logue commercial list price for each year at issue less adjust-
ments for Xerox option-to-purchase credits of fifty percent (the
half-year convention method). A summary judgment order
thereafter dismissed the petitioner's remaining discrimination
and exemption claims. Petitioner appeals.

The Court of Appeals *held:*

1. The subject copiers and duplicators are not bought and
sold for the production of income, rather they are sold to
persons purchasing the machines for their own use.

2. The tribunal did not err as a matter of law in refusing to
adopt the capitalization-of-income approach instead of the mar-
ket approach. Where, as here, there are a number of suffi-
ciently similar sales, the market sales approach provides the
best valuation methodology. The tribunal's use of the half-year
convention formula to value the used machines was not invalid.

3. The tribunal's decision was supported by competent, mate-
rial and substantial evidence on the whole record.

4. The tribunal adequately considered depreciation in its
valuation formula. Petitioner's argument that the tribunal

REFERENCES

Am Jur 2d, State and Local Taxation §§ 753 *et seq.;* 787.
See the annotations in the Index to Annotations under Taxes.

improperly applied the market approach to all segments of the Xerox product line is without merit.

5. The tribunal specifically ruled upon the proposed findings of fact submitted by the parties which controlled its decision and order. The tribunal's decision included a concise statement of facts and conclusions of law.

6. The tribunal's rulings on petitioner's level of assessment, method and mode of assessment, and exemption from taxation claims were not erroneous.

Affirmed.

1. TAXATION — ASSESSMENT — TAX TRIBUNAL.

The Michigan Tax Tribunal has a duty to select the assessment method which is most appropriate, accurate and reasonably related to fair market value to determine the true cash value or fair market value of the property at issue; in a dispute over valuation methodology, if neither party's valuation methodology and conclusion is accurate, the tribunal is free to reject both in order to ascertain true cash value.

2. TAXATION — TAX TRIBUNAL — APPEAL.

Appellate court review of decisions of the Michigan Tax Tribunal, in the absence of fraud, is limited to determining whether the tribunal made an error of law or adopted a wrong principle; the factual findings of the tribunal are final, provided they are supported by competent and substantial evidence (Const 1963, art 6, § 28).

3. TAXATION — ASSESSMENT — VALUATION — MARKET SALES.

The market sales approach to valuation provides the best valuation methodology for the assessment of property for taxation where there are a number of sufficiently similar sales.

4. ADMINISTRATIVE LAW — TAX TRIBUNAL — PROPOSED FINDINGS OF FACT — FINDINGS OF FACT.

The Administrative Procedures Act requires factual findings by the Michigan Tax Tribunal in regard to proposed findings of fact submitted by the parties only as to those proposed findings which would control the tribunal's decision or order (MCL 24.285; MSA 3.560[185]).

5. TAXATION — TAX TRIBUNAL — DECISIONS.

Decisions by the Michigan Tax Tribunal must include a concise statement of facts and conclusions of law (MCL 205.751; MSA 7.650[51]).

6. TAXATION — EXEMPTIONS FROM TAXATION — INVENTORY PROPERTY.

The policy reflected in the statute providing that inventory

property shall be exempt from taxation is to provide an exemption for nonincome-earning inventory and not to income-producing property on lease (MCL 211.9c; MSA 7.9[3]).

*Van Til, Kasiborski & Ronayne, P.C.* (by *Lawrence R. Van Til* and *John R. Ronayne III*), for Xerox Corporation.

*Shifman, Goodman & Carlson, P.C.* (by *Burton R. Shifman* and *John A. Carlson*), for Oakland County.

*Daniel A. Ophoff,* Assistant City Attorney, for the City of Grand Rapids.

Before: MacKenzie, P.J., and Allen and G. W. Crockett, III,* JJ.

Per Curiam. Petitioner appeals as of right from the Michigan Tax Tribunal's December 12, 1983, opinion and partial judgment and August 3, 1984, order of summary judgment, in favor of respondents. The tribunal consolidated numerous cases which were heard on the issue of the valuation methodology to be used for the 1980, 1981 and 1982 tax years to determine the true cash value of the twenty-six models of leased copier and duplicator machines that are located in respondent local assessing units. In the December 12, 1983, opinion and partial judgment, the tribunal adopted a modified version of respondents' market approach to value for ad valorem taxation purposes instead of the capitalization-of-income method proposed by petitioner which had been used in prior years. The tribunal held in abeyance the remaining issues of discrimination and exemption pending the redetermination of true cash value and lawful assess-

---

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

ments by the respondent assessing units using the tribunal's market approach, which took the published Xerox catalogue commercial list price for each year at issue less adjustments for Xerox option-to-purchase credits of fifty percent (the half-year convention method). The August 3, 1984, summary judgment order dismissed the petitioner's remaining discrimination and exemption claims. We affirm.

In *Antisdale v Galesburg,* 420 Mich 265, 276; 362 NW2d 632 (1984), the Michigan Supreme Court identified three generally accepted methods of valuation to determine true cash value or fair market value of property for tax assessment purposes: the cost-less-depreciation approach, the capitalization-of-income approach and the market approach. The competing valuation approaches in this case are the capitalization-of-income approach and the market approach.

Petitioner contends that it properly employed the capitalization-of-income (income) approach to valuing its property and that the tribunal erred as a matter of law in rejecting petitioner's approach in favor of the market approach to value. In *Antisdale, supra,* the Supreme Court set forth the description of the income approach as provided in the Michigan State Tax Commission Assessor's Manual, which, under MCL 211.721; MSA 7.40, all government assessors are required to use:

### INCOME APPROACH

"The income approach is based on the premise that there is a relation between the income a property can earn and its value. A large number of commercial properties are purchased and leased to tenants by the owner who does not get the advantages arising from his own occupancy of the property. Consequently, the future net income the

property is capable of earning is the main benefit to the owner. For this reason the worth of the property to prospective purchasers is based largely upon its income. In addition to income earned annually during an ownership term, another important benefit is the net amount received from the sale of property when ownership is terminated. The earning potential of the property at that time will directly affect its sale price. The net income earning capacity of the property now and at ownership termination is, therefore, an important gauge of its value. The income approach to value translates the estimated future income of a property into total present value by the use of the various data and organized mathematical computations." 2 State Tax Comm Assessor's Manual, Ch X, p 1. [420 Mich 276-277, n 1.]

Petitioner argues that because all of the copiers and duplicators involved in this case are used as income-producing property, the income approach is the proper method of valuation. The tribunal discounted petitioner's income approach, stating:

We reject Petitioner's contention "that the income approach be used because the subject personal property is income producing". Proofs were presented primarily in support of both the income and market approaches. We have considered such proofs and are fully cognizant that in previous years (prior to the years at issue herein) the income approach was used by Respondents in their implementation of court decisions prevalent at that time. Reliance on such decisions as *Mohawk Data Sciences Corp v Detroit,* 63 Mich App 102 [234 NW2d 420] (1975) [lv den 395 Mich 778 (1975)], is misplaced under the facts and circumstances present in this cause. In *Mohawk,* there was an insufficient number of reliable market sales to support the market approach. The *Mohawk* decision does not preclude the use of an approach other than the income method if the

circumstances warrant the use of another acceptable method.

As for prior decisions by this Tribunal supporting the income method, the issue of whether an improper method was used to determine true cash value was never heard or decided on the merits and, therefore, is not precedential.

The fact that the subject personal property is income producing is not, in itself, sufficient to allow its use exclusively over any other method. It should be noted that neither Petitioner, as owner, nor the lessees are investors typical of the real estate market where the income approach is frequently applicable. Petitioner is a manufacturer, retailer and lessor who provides maintenance services and sells supplies. The lessees are users of the machines. Petitioner's witness, Mr. Petros [sic], Michigan regional sales manager, testified to that effect. In addition, Petitioner's witness, Mr. Friedlander, testified that presently Petitioner does no business with leasing companies (who, we conclude, could possibly be classified as investors).

Subsequently, discussing the market approach, the tribunal added that "use of the income approach under the circumstances therein would produce a value which is not reasonably related to market value." Noting substantial changes in the copier and duplicator field in recent years, the tribunal opined:

While the income approach is an acceptable method under certain circumstances, it is not so here because proofs establish that sales were made at significantly higher amounts than as indicated by Petitioner's income approaches (the "Xerox" and "Kinnard" values).

The tribunal concluded this discussion by stating that "the income approach under the facts presented here clearly produces a wrong result inconsistent with the realities of the market place."

Respondents proposed that a market or comparable sales approach should be used to value leased Xerox copier and duplicator equipment because there were a large number of sales of that equipment. A brief description of the market approach to value was also provided by the Supreme Court in *Antisdale, supra:*

> "The market value of a given property is estimated by comparison with similar properties which have recently been sold or offered for sale in the open market. The principle of substitution is applied, i.e., when property is replaceable, typical buyers will not purchase it at a higher price than those paid for similar properties with comparable locations, characteristics, and future earning capabilities. Of all appraisal methods the market data approach is the most direct, the best understood, and the only one directly reflecting the balance of supply and demand for a whole property in actual market place trading." 1 State Tax Comm Assessor's Manual, Ch VI, pp 1-2. [420 Mich 276, n 1.]

The *Antisdale* Court later added that another feature of the market approach is that "evidence of the sales prices of a number of comparable properties, if sufficiently similar, supports the conclusion that factors extrinsic to the properties have not entered into the value placed on the properties by the parties." *Id.* at 278-279.

In the instant case, the tribunal opined that when sufficient data is available the use of comparable sales best determines market value, and that here there were sufficient sales in the marketplace to arrive at an estimate reflecting market value of the leased machines. The tribunal held, however, that the Xerox commercial list price for its machines must be adjusted in order to arrive at the market price of the subject used equipment. Accordingly, the tribunal concluded:

Petitioner's published catalogue commercial list price (kept current by periodic adjustments by Xerox) with published OTP [option to purchase] credit allowances adjusted by using the "Half-Year Convention" formula fairly presents the true cash value ("usual selling price") of the subject copier/duplicator machines at issue for each of the respective tax years involved.

The Tax Tribunal is duty bound to select the method which is most appropriate, accurate and reasonably related to fair market value in order to determine the true cash value or fair market value of the property at issue. *Presque Isle Harbor Water Co v Presque Isle Twp,* 130 Mich App 182, 191; 344 NW2d 285 (1983). Moreover, in a dispute over valuation methodology, if neither party's valuation methodology and conclusion is accurate, the tribunal is free to reject both determinations in order to ascertain true cash value. *Clark Equipment Co v Leoni Twp,* 113 Mich App 778; 318 NW2d 586 (1982). Once the Tax Tribunal has rendered its valuation and assessment decision, appellate review is extremely narrow. In *Antisdale, supra,* the Supreme Court reiterated the applicable standard:

[C]ourt review of decisions of the Tax Tribunal, in the absence of fraud, is limited to determining whether the tribunal made an error of law or adopted a wrong principle; the factual findings of the tribunal are final, provided that they are supported by competent and substantial evidence. Const 1963, art 6, § 28; *Fisher-New Center Co v State Tax Comm (On Rehearing),* 381 Mich 713; 167 NW2d 263 (1969). [420 Mich 277.]

Petitioner claims that, in rejecting its capitalization-of-income approach, the Tax Tribunal committed an error of law because its decision is contrary

to prior rulings of this Court. In *Presque Isle, supra,* pp 192-193, this Court, citing *Northwood Apts v Royal Oak,* 98 Mich App 721; 296 NW2d 639 (1980), generalized that the proper method of assessing income-producing property is the capitalization-of-income approach. On the basis of this authority, petitioner contends that, regardless of the number of sales, the income approach is the method to be used to value income-producing property.

We believe that petitioner's reliance on *Presque Isle* and *Northwood Apts* is misplaced. Unlike the property in those cases, the subject copiers and duplicators are not bought and sold for the production of income. Xerox does no business with leasing companies, and an income approach could not be expected to duplicate the decision-making process of actual buyers seeking to invest in Xerox equipment for income-producing purposes since there are no such buyers. The only market in which Xerox sold machines was to persons purchasing the machines for their own use, not for the production of income.

Petitioner also claims reliance upon *Mohawk Data Services, supra. Mohawk Data Services* involved the review of a circuit court decision where the lower court concluded that there were insufficient sales of the subject data processing equipment at list price to use the sales approach. Although this Court affirmed the use of the income approach to value the data processing equipment, no language in that case supports petitioner's assertion that it stands for the proposition that the income approach must invariably be used to value income-producing property. Moreover, there is substantial evidence in this case that for the tax years under review there have been tens of thousands of sales nationwide in each year, and that nearly a

third of all machines ever produced were sold at list price or at a figure determined by relationship to list price.

Given the facts of this case and the fact that the tribunal must, as was stated in *Consumers Power Co v Big Prairie Twp,* 81 Mich App 120, 130; 265 NW2d 182 (1978), lv den 403 Mich 848 (1978), adopt the "method which is most appropriate to the individual case as the particular facts may indicate," we are satisfied that the tribunal did not err as a matter of law in refusing to adopt the income approach instead of the market approach. The Supreme Court's statements in *Antisdale, supra,* and the State Tax Commission Assessor's Manual itself quite clearly compel the conclusion that, where there are a number of sufficiently similar sales, the market sales approach provides the best valuation methodology.

Petitioner also raises several arguments to the effect that the decision of the Tax Tribunal was not supported by valid sales and option to purchase (OTP) data.[1] Having fully considered the par-

---

[1] Specifically petitioner argues that the tribunal's rejection of the income approach was based upon the erroneous fact that copiers and duplicators did not sell for prices that correspond to values determined by the income approach, and that the tribunal's data was erroneously derived from sales made pursuant to the Xerox option to purchase. Petitioner further asserts that the tribunal erred in failing to mention or consider the testimony of Louis Slawetsky, president of Industry Analysts, Inc., and maintains that if one considers this data, it would prove that Xerox's income approach data and conclusion was exceedingly conservative and that the actual sales of the same and comparable equipment really took place at lower prices than would be indicated by the income method. Petitioner also argues that the tribunal's *adoption of the fifty percent option to purchase sales approach* was unsupported by, and at odds with, the respondents' evidence which sought to obtain a "list price" method of valuation. Xerox contends that the tribunal's consideration of the OTP sales prices was erroneous because the tribunal chose to guess at OTP sales prices by subtracting fifty percent of the published maximum OTP credits from list price in reliance upon the half-year convention formula. Xerox alleges that no witness testified that OTP sales, at the price at which they actually occurred, were valid indicators of value.

ties' extensive arguments in this regard, suffice it to say that we do not perceive an adoption of a wrong appraisal method or the absence of competent evidence to support the Tax Tribunal's opinion and judgment. The tribunal apparently relied upon testimony of petitioner's own witnesses, Steven Friedlander and Charles Petross, that sales were made at list price or at list price with user credit allowances. We think it amply clear from the record that there were sufficient sales of the copiers and duplicators to warrant use of the sales approach. It is apparent that there is a national pricing and leasing strategy upon which to base these market value figures. Moreover, we are unpersuaded on this record that the tribunal's half-year convention formula to value the used copiers and duplicators is invalid and decline to state that the OTP data and the sales data in the record does not support the tribunal's conclusion. Indeed, we agree with respondents that the degree of preci-

Xerox, relying on Appendix A of its appellate brief, also contends that reliance upon OTP sales was erroneous because more than ninety-six percent of the options to purchase were not accepted. It attacks the half-year convention formula and challenges its validity on the basis that it is erroneous to assume that OTP sales occurred on average halfway through the OTP period and uniformly throughout the period. Xerox also submits that it was erroneous for the tribunal to conclude that the maximum OTP purchase credits a rental customer could receive were those that were described in the Xerox catalogues. Xerox argues that a review of its Appendix A shows that, in every instance, the actual sales price is less than the tribunal value and, in many instances, is less than the price with the published maximum OTP credit.

Petitioner contends that review of Appendix A will yield an average reduction for list price of 23.6 percent instead of the nine percent reduction produced by the tribunal values, and states that this produces an approximation of OTP credits which is substantially less than the credits actually received, and thus seriously overstates the selling prices of Xerox copiers and duplicators purchased in OTP transactions. Finally, petitioner argues that the tribunal failed to identify or quantify the economic impact that such incentives as months of free service, below market financing and extended warranties have in reducing the real or effective selling price. It asserts that this evidences a failure to distinguish the difference between sales price and fair market value.

sion achieved in the OTP approach is probably a significant improvement over the formerly used income approach. On the arguments presented, we conclude that petitioner has failed to demonstrate that the tribunal decision involved the adoption of a wrong appraisal principle or was without competent, material and substantial evidence on the whole record.

Petitioner also attacks the tribunal's methodology on the bases that (1) it is deficient in the measurement of depreciation and (2) it improperly applied the market approach to all segments of the Xerox product line. The latter argument is unsupported by the record and the former argument is without merit. There is record evidence showing that sales were always made at list price less OTP credit and it is clear that Xerox does not recognize depreciation in the lease or sale of its leased copiers and duplicators beyond the price reduction provided in the OTP credits. Since the prices at which the Xerox property sells already reflect depreciation, the tribunal adequately considered depreciation in its valuation formula.

Petitioner next argues that the tribunal committed an error of law in its December 12, 1983, opinion and partial judgment because it failed to rule on all 212 proposed findings of fact submitted by the parties, contrary to the mandates of § 85 of the Administrative Procedures Act, MCL 24.285; MSA 3.560(185). Section 85, however, requires factual findings only as to proposed findings "which would control the decision or order." Here, a review of the tribunal's fifteen-page opinion and partial judgment establishes that the proposed findings of fact which controlled its decision and order were specifically ruled upon. It is clear as well that the tribunal complied with MCL 205.751; MSA 7.650(51), which requires that a decision of

the tribunal include a concise statement of facts and conclusions of law. See *Kern v Pontiac Twp,* 93 Mich App 612; 287 NW2d 603 (1979). Reversal on this ground is unwarranted.

Petitioner's final contention is that the tribunal erred as a matter of law in granting summary judgment in favor of respondents on petitioner's level of assessment, method and mode of assessment, and exemption from taxation claims. While acknowledging the brevity of the order granting summary judgment, we find no error. GCR 1963, 517.1. Petitioner agreed at various conferences that level of assessment was not an issue; we decline to make it one at this point in these very protracted proceedings, especially where, as here, there is no showing that injustice would result. In any event, this Court rejected a similar argument in *Plymouth Twp v Wayne Co Bd of Comm'rs,* 137 Mich App 738, 749; 359 NW2d 547 (1984). Likewise, we believe that petitioner's method and mode of assessment claim was properly rejected on the reasoning of *Plymouth Twp, supra,* p 749, that " 'uniformity' simply guarantees equality of the tax burden. It does not mean that each procedure used must be the same." Finally, we reject petitioner's assertion that it stated a claim of exemption on which relief could be granted. Clearly the property at issue was leased equipment and not inventory. The policy reflected in the inventory exemption statute, MCL 211.9c; MSA 7.9(3), is to provide an exemption for nonincome-earning inventory and not to income-producing property on lease. That policy clearly supports the tribunal's decision in this case.

Affirmed.