YPSILANTI TOWNSHIP SUPERVISOR v.
STATE TAX COMMISSION

OPINION OF THE COURT

1. TAXATION—STATE TAX COMMISSION—ASSESSMENTS—APPEAL AND ERROR.

Township supervisor was required to present his assessment roll to the Township Board of Review on the first Tuesday following the first Monday in March and the Board of Review was then required to review the assessment roll as prepared by the supervisor, make such alterations, increases or changes as it found to be necessary, and hear and take action on the complaints of property owners who considered their property to be unfairly assessed; taxpayers aggrieved with their assessment, as determined by the Board of Review, could appeal from such determination to the State Tax Commission not later than the first Monday in May; thus, the pathway to be followed by the individual taxpayer who is aggrieved

REFERENCES FOR POINTS IN HEADNOTES

[1] 51 Am Jur, Taxation §§ 649, 728.
[2] 51 Am Jur, Taxation §§ 662, 663.
[3] 51 Am Jur, Taxation § 742.
[4, 6, 10] 51 Am Jur, Taxation § 741 et seq.
[5] 51 Am Jur, Taxation § 150.
[7, 8] 51 Am Jur, Taxation §§ 767–774.
[9] 51 Am Jur, Taxation §§ 753, 758, 759, 762.

with his assessment is to first make presentation to the township supervisor, then to the township Board of Review, and finally to the State Tax Commission (MCLA §§ 211.29, 211.30, 211.152).

2. Taxation — Property Taxes — Assessments — Townships — Township . Supervisor.

Assessment of all property at 50% of its true cash value was the responsibility of a township supervisor as all taxable property, real and personal, is placed in one category to be uniformly assessed and taxed.

3. Taxation—Property Taxes—Equalization—Board of Review— County Board of Commissioners—Tax Rolls—Local Units of Government.

After completion of assessments and review by the Board of Review, it became the duty of a county board of commissioners to equalize the tax rolls of the various units of local government so that the total property tax base of the county would be equitably allocated.

4. Taxation — Property Taxes — Assessments — Equalization — Townships.

Lack of uniform treatment of an individual taxpayer is not caused by an increased or decreased equalization figure for the whole of the real and personal property of the township although an increase does magnify any inequity of treatment already existing in the assessment.

5. Taxation—Equal Treatment.

One principle overrides all others in tax matters—the principle of equal treatment—is now recognized as being primary.

6. Taxation — State Tax Commission — Statutes — Equalization Hearing — Discretion — Township Supervisor.

The State Tax Commission, by statute, is vested with discretion to determine whether to proceed with a full-blown equalization hearing and, because of its superior capabilities, owes a greater duty to the people of this state than to insist on a technical showing of unfairnss, unjustness or discrimination and this is particularly true when the party involved is a township supervisor who is insufficiently advised and inexperienced to take full advantage of the "department to survey assessments" referred to in a statute (MCLA § 211.34[2]).

7. TAXATION—STATE TAX COMMISSION—APPEAL AND ERROR—EQUAL-
IZATION—COUNTY BOARD OF COMMISSIONERS.

> The State Tax Commission did not technically abuse its powers
> or duties in refusing to entertain an appeal where the plaintiff,
> a township supervisor, failed to make a showing that the effect
> of an equalization by the County Board of Commissioners
> which was complained of was unfair, unjust, inequitable or
> discriminatory but it fell short of what the legislature and
> the people of Michigan might reasonably expect from it in
> refusing to further entertain the appeal.

CONCURRING OPINION

T. E. BRENNAN and T. G. KAVANAGH, JJ.

8. TAXATION—STATE TAX COMMISSION—DISCRETION—INVESTIGATION
—EQUALIZATION.

> *There was no clear abuse of discretion by the State Tax Com-*
> *mission in failing to order a full investigation in light of the*
> *need for stability for local government where a township su-*
> *pervisor appealed to that commission to review the equalized*
> *value of the township.*

9. TAXATION — STATE TAX COMMISSION — ASSESSMENTS — EQUALI-
ZATION — APPEAL AND ERROR.

> *A taxpayer must seek review on or before the second Monday*
> *in March, a condition precedent to appeal to the State Tax*
> *Commission, and the equalization process at the county level*
> *does not begin until April; therefore, an individual taxpayer,*
> *assessed at 50% or less, ought not to bear the burden of*
> *seeking review on the premise that the assessment exceeds*
> *the "weighted average" of all assessments in his community*
> *because the taxpayer is not able to know in March that the*
> *April equalization will produce a "weighted average" less than*
> *his own level of assessment (MCLA §§ 211.30, 211.34, 211-*
> *.152).*

10. TAXATION—PROPERTY—ASSESSMENTS.

> *Unequal assessments, as a practical matter, must be reduced to*
> *a previously ascertained, fixed and published average level of*
> *assessment, if the taxpayer is to have a remedy.*

Appeal from Court of Appeals, Division 3, T. M.
Burns, P. J., and R. B. Burns and Fitzgerald, JJ.,

denying application for leave to appeal from State Tax Commission. Submitted September 15, 1971. (No. 40 June Term 1971, Docket No. 53,078.) Decided December 21, 1971.

Petition by Supervisor of the Township of Ypsilanti to the Michigan State Tax Commission to review the equalized value of the township. Petition denied. Petitioner's application for leave to appeal to the Court of Appeals denied. Petitioner appeals. State Tax Commission affirmed.

*Henry C. Ritchie* and *Sugar, Schwartz, Silver, Schwartz & Tyler* (by *Donna Beck* and *Lawrence Warren*), for petitioner.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *William D. Dexter* and *Richard R. Roesch,* Assistant Attorneys General, for respondent.

ADAMS, J. In this case, the search is for equality of treatment of taxpayers and of governmental units. Such pursuit involves two separate but intertwining paths. One pathway pertains to the matter of the taxpayer's individual assessments of his real and personal property; the other pathway pertains to the equalization of the total real and personal property values within the various units of local county government.

During the year 1970, Fred H. Lunde, plaintiff, was Supervisor of the Township of Ypsilanti in Washtenaw County. One of his duties as supervisor was to act as the assessing officer of the real and personal property in that township. In that capac-

ity, it was his responsibility to determine "the true cash value" of such property and to assess all such property at 50% of such value. (MCLA §§ 211.24, 211.27 [Stat Ann 1971 Cum Supp §§ 7.24, 7.27]).

After completing his assessment roll, plaintiff Lunde was required to present it to the Township Board of Review on the first Tuesday following the first Monday in March, which in 1970 was March 3. (MCLA § 211.29 [Stat Ann 1971 Cum Supp § 7.29]). The Board of Review was then required to review the assessment roll as prepared by the supervisor, make such alterations, increases or changes as it found to be necessary, and hear and take action on the complaints of property owners who considered their property to be unfairly assessed. (MCLA §§ 211.29, 211.30 [Stat Ann 1971 Cum Supp §§ 7.29, 7.30]). Taxpayers aggrieved with their assessments, as determined by the Board of Review, could appeal from such determination to the State Tax Commission not later than the first Monday in May. (MCLA § 211.152 [Stat Ann 1971 Cum Supp § 7.210]).[1] Thus it will be seen that the pathway to be followed by the individual taxpayer who is aggrieved with his assessment is first to make a presentation to the township supervisor, then to the Township Board of Review, and finally to the State Tax Commission.

Equalization of the total property values in Ypsilanti Township, along with that of other units of local government within Washtenaw County—which equalization is the subject of this lawsuit—takes a different path once the local boards of review have completed their task.

---

[1] For an alternative remedy by suit, see MCLA § 211.53 (Stat Ann 1971 Cum Supp § 7.97).

In 1964, the legislature passed Act 275 providing for the establishment and maintenance of "a department to survey assessments and assist the board of supervisors [now commissioners] in the matter of equalization of assessments". The act mandated the creation of such department in every county by December 31, 1968. The act provides in § 34(2) (MCLA § 211.34[2] [Stat Ann 1965 Cum Supp § 7.52(2)]) :[2]

"The board of supervisors [now commissioners] may, through such department, furnish assistance to local assessing officers in the performance of any duties imposed upon such officers by this act, including the development and maintenance of accurate property descriptions, the discovery, listing and valuation of properties for tax purposes, and the development and use of uniform valuation standards and techniques for the assessment of property."

On March 6, 1970, plaintiff received a letter from George Kostishak, Director of the Equalization and Property Description Department of Washtenaw County, the body of which letter is as follows:

"At the Administration and Taxation Committee meeting on Thursday, March 5, 1970 the following resolution was passed:

"Motion by Supervisor Hand, supported by Supervisor Bredernitz carried—the ratio by class for Ypsilanti Township as established by the Michigan State Tax Committee [sic] will be used as the starting ratio for 1970 assessment rolls. Proper credit shall be applied to each individual ratio for

[2] Quoted portion of statute appears as originally enacted by PA 1964, No 275. Later amendments enacted by PA 1968, No 206, and PA 1970, No 152, changed "supervisors" to "commissioners" and made other slight wording changes which do not affect the substantive meaning of the statute.

any adjustments made for the 1970 rolls when computing the 1970 equalization for said township.

"The following individual ratio shall apply:

"Real property ...... Agricultural .. 48.91%

Commercial .. 50.00%

Industrial .... 50.00%

Residential ... 39.44%

"Real total average ................. 45.10%

"Personal property .. Commercial .. 46.38%

Industrial .... 49.29%

Utility ....... 50.00%

"Personal average—total ............ 49.15%

"Total average—real and personal ... 46.55%

"It is the feeling of the committee that the adoption of the above ratios are necessary in order to provide equitable equalization throughout the county, since this information is currently available to them.

"If you have any questions, please feel free to contact me."

Plaintiff complains that the information contained in this letter was received by him too late for him to do anything about it inasmuch as he had already submitted his assessment roll to the Board of Review. At the time the letter was received by plaintiff, his Township Board of Review was still sitting[3] and changes in the assessment roll could have been made by that board. On the record before us, we are not favored with any information as to what action, if any, was taken by plaintiff with respect to this letter.

On April 23, 1970, the Washtenaw County Board of Commissioners determined the equalized value of the Township of Ypsilanti to be $225,630,590. The certified record is silent on the point but the parties seem to be in agreement that the equalized

[3] Pursuant to MCLA §§ 211.29, 211.30 (Stat Ann 1971 Cum Supp §§ 7.29, 7.30).

value exceeded the aggregate of local assessments as determined by plaintiff Lunde (with whatever revisions may have been made by his Township Board of Review) by approximately $16,000,000 and exceeded the 1969 equalized value of the township by approximately $24,000,000. The record fails to reveal how the Board of Commissioners arrived at the equalized value of the Township of Ypsilanti or how such equalized value compares with the equalized values of other units of local government within Washtenaw County. It is alleged that the Board of Commissioners adopted the partial study of values by the State Tax Commission referred to by George Kostishak in his letter of March 6, 1970, to plaintiff. It is also alleged that the State Tax Commission's study of values by the use of sales was limited solely to residential property which, as a class of property, represents less than 25% of the total value of the Township of Ypsilanti, that no other class of property was studied, and that the study was not made throughout the county as a whole but only in a few units which had individual assessment appeals in 1969. Plaintiff has failed to provide the study as a part of the record in this case. There is no showing or attempt to show how the percentages stated in the Kostishak letter—other than residential—were arrived at.

The record on appeal reflects a total absence of information on the action taken by the County Board of Commissioners in determining equalized values of the several cities and townships within Washtenaw County. Presumably, as to Ypsilanti Township, the board used a weighted average that was an approximation of the weighted average of real and personal property of the township of 46.55% referred to in the Kostishak letter. No effort had been made by plaintiff, other than by general allegation, to show

the correctness or incorrectness of this percentage or how the weighted average was arrived at.

Plaintiff Lunde appealed to the State Tax Commission in a petition setting forth claims of arbitrary and discriminatory action by the County Board of Commissioners. He was advised by the secretary of the commission as follows:

"In the filing of your appeal you did not sufficiently substantiate your allegation of discrimination against the township and you will, therefore, within 15 days and not later, file with the State Tax Commission a detailed substantiation of your allegation of discrimination against your township in the adoption of the equalization report by the Board of Supervisors."

Plaintiff then filed a substantiation of appeal in which, after making the claims set forth above, he alleged as follows:

"12. Use of this sales study [of the Michigan State Tax Commission] reduced the ratio of the residential class of property from 48.26 percent in 1969 to 39.44 percent in 1970. And, it reduced the average unit ratio for all properties from 49.22 percent in 1969 to 46.43 percent in 1970 which resulted in increasing the factor from 1 for 1969 to 1.08 for 1970.

"13. A factor of 1.08 instead of a factor of 1 will result in substantial increase of taxes to taxpayers in the Township of Ypsilanti.

"14. The remaining classes of property in the Township of Ypsilanti have assessment ratios at or near 50 percent. The application of a factor of 1.08 in essence will raise the assessments of these classes of properties other than residential over the constitutional limitation on assessment levels of 50 percent of true cash value."

The appeal was referred to the staff of the State Tax Commission. The staff report to the commission contains the following comments:

"1. This sales-ratio study made by the State Tax Commission on the residential class is criticized by the appellant because, 'the remaining classes are assessed at or near 50 percent of true cash value, . . . the arbitrary procedure of adding to the equalized base of the residential class of property, without allocation to that particular class, results in the assessed value of the remaining classes of properties to exceed the constitutional limit of 50 percent of true cash value.' This seems to say that the appellant is not assessing all of the properties uniformly. Further, he has offered no proof that classes other than residential are assessed at 50 percent or near 50 percent. Further, all of the information used by the State Tax Commission was available to the appellant and he failed to use it in establishing 1970 assessments.

"2. The appellant protests 'Raising only a portion of the assessing units to a more current level of value while allowing the rest to remain at the older lesser value is arbitrary and leads to inequities . . .' This allegation supposes that none of the other assessors is making assessments according to law. No proof is offered. The county department in 1969 made studies in 10 units; the State Tax Commission made partial studies in 3 units. In 1968, the county department made studies in 4 units and in 1967 made studies in 3 units including Ypsilanti Township. Total number of units in the county is 24."

On June 15, 1970, the secretary of the State Tax Commission advised the Washtenaw County Clerk that the commission has adopted a resolution to deny the appeal of the Township of Ypsilanti and to confirm the equalization of the county as adopted by the Board of Commissioners. The several units

of government of the county were authorized to proceed to levy taxes in accordance with the appropriate sections of the property tax law.  In that letter, the secretary of the State Tax Commission stated:

"With respect to the appeal from Ypsilanti Township, the Commission noted that a sales ratio study had been made by the State Tax Commission which is criticized by the appellant because 'the remaining classes are assessed at or near 50% of true cash value.'  No evidence is submitted to support the claim that all other properties except residential are assessed at 50% or near 50% of true cash value.

"All of the data gathered by the State Tax Commission during its surveys in Washtenaw County during equalization studies or on appeals from local assessments were available to the supervisor of the township but he made no use of them in establishing 1970 assessed valuations.

"The supervisor further claims that inequity results because only a portion of the assessing units were increased while others were permitted to remain at or near the value of the prior year.  This argument is not accepted because it presupposes that none of the other assessing units is making lawful valuations but no evidence has been given to show that this is so.

"Finally, the Commission notes argument two, that the supervisor was not given sufficient notice of a proposed increase in the equalized valuation of the township, however, careful reading of the several sections of the General Property Tax Law dealing with equalization of a county do not reveal any language which requires a supervisor to be given notice of a contemplated equalized valuation for a township or city.  Section 211.34, C.L. 1948 makes no mention of the equalized valuation having been transmitted to the supervisor prior to the session in April of each year.

"The Commission recognizes the desirability of foreknowledge of the assessor to a proposed equalized valuation of his unit of government but does not admit that failure to have been given notice constitutes reversible error."

The procedure for an appeal to the State Tax Commission by an aggrieved supervisor because of the action of the Board of Commissioners in equalizing the valuations of his township is set forth in detail in MCLA § 211.34 (Stat Ann 1965 Cum Supp § 7.52). The crucial language reads as follows:[4]

"The said state tax commission shall, upon receipt of such petition, forthwith examine same, and if in its judgment there is a showing to the effect that the equalization complained of is unfair, unjust, inequitable or discriminatory may proceed at once to make an investigation of the matters set forth in said petition."

Then follows authorization to the commission to reconvene the Board of Commissioners of the county and to launch a full scale investigation. The final sentence of the section reads: "The action of the state tax commission in the premises shall be final and binding and shall constitute the equalization of the county for the tax year."

The procedure of the State Tax Commission in matters of equalization is set forth in a footnote appearing in the brief of the Attorney General:

"Continued operation of local government is a public interest competing and conflicting with grant of county equalization appeals. Thus, they are granted only upon a showing of valid grounds for appeal. The annual reports of the State Tax Commission to the Governor of Michigan for the six-

---

[4] Quoted portion of statute appears as originally enacted by PA 1964, No 275. PA 1968, No 206, made inconsequential changes in wording which do not affect the substantive meaning of the statute.

year period 1965–1970 indicate that there were filed with the Commission 77 county equalization appeals, of which the Commission accepted 14, resulting in re-equalization, and rejected 63."

Lunde's claim of discrimination is based upon acceptance by him of an analysis of his assessments that shows that he assessed real property as follows: agricultural at 48.91%; commercial at 50%; industrial at 50%; residential at 39.44%; and that he assessed personal property as follows: commercial at 46.38%; commercial-industrial at 49.29%; and utility at 50%. It was his responsibility to assess all property at 50% of its true cash value. "[A]ll taxable property, real and personal, is placed in *one category* to be uniformly assessed and taxed." *In re Appeal of General Motors Corp.* (1965), 376 Mich 373, 378.

After completion of assessments and review by the Board of Review, it became the duty of the Washtenaw County Board of Commissioners to equalize the tax rolls of the various units of local government so that the total property tax base of the county would be equitably allocated. If Lunde under-assessed but treated all property owners equally, Ypsilanti Township's total equalized value, even though increased, would not adversely affect any individual taxpayer. If he over-assessed and was equalized at a lower figure than his own total, again the individual taxpayer would not be adversely affected. Lack of uniform treatment of an individual taxpayer is not *caused* by an increased or decreased equalization figure for the whole of the real and personal property of the township although an increase does magnify any inequity of treatment already existing in the assessments.

One principle overrides all others in tax matters. "[T]he principle of equal treatment  *  *  *  is now

recognized as being primary." *In re Appeal of General Motors Corp.* (1965), 376 Mich 373, 379. In this case, if as a result of what was done by the Board of Commissioners, some Ypsilanti Township taxpayers ended up with assessments in excess of 50% of true cash value, the primary blame and responsibility for such result rests with plaintiff Lunde. If the total of real and personal property values of Ypsilanti Township was fixed by the Board of County Commissioners in an amount that resulted in unequal treatment as among the township and the other units of local government in Washtenaw County, there is a total failure of proof to that effect in the record before us.

The State Tax Commission, by statute, is vested with discretion to determine whether to proceed with a full-blown equalization hearing. The State Tax Commission, because of its superior capabilities, owes a greater duty to the people of this state than to insist on a technical showing of unfairness, unjustness or discrimination. This is particularly true where the party involved is a township supervisor who is insufficiently advised and inexperienced to take full advantage of the "department to survey assessments" referred to in MCLA § 211.34(2) (Stat Ann 1965 Cum Supp § 7.52[2]). Unless the State Tax Commission takes a position of aggressive leadership, the taxpaying public of this state will suffer from the pressing assessing and equalizing time schedule. Any reasonable showing to it that the effect of the equalization complained of is unfair, unjust, inequitable or discriminatory should result in a complete investigation of the matters complained of.[5] In this case, however, plaintiff has

─────────────────

[5] While MCLA § 211.150 (Stat Ann 1971 Cum Supp § 7.208) is not applicable to the question of quasi-judicial review of county equalizations by the Tax Commission under MCLA § 211.34 (Stat Ann 1971 Cum Supp § 7.52), the administrative duties of the Com-

failed to make such a showing. While technically the State Tax Commission did not abuse its powers or duties in refusing to entertain the appeal, it fell short of what the legislature and the people of Michigan might reasonably expect from it in refusing further to entertain the appeal.

The State Tax Commission is affirmed. No costs, a public question being involved.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON and WILLIAMS, JJ., concurred with ADAMS, J.

T. E. BRENNAN, J. (*concurring*). I concur solely on the ground that in light of the need for stability in local government, there was no clear abuse of discretion by the State Tax Commission in failing to order a full investigation.

I disagree, however, with the proposition that an individual taxpayer, assessed at 50% or less, ought to bear the burden of seeking review on the premise that the assessment exceeds the "weighted average" of all assessments in his community. Since the taxpayer must seek review on or before the second Monday in March (MCLA § 211.30 [Stat Ann 1971 Cum Supp § 7.30]), which review is a condition precedent to appeal to the State Tax Commission (MCLA § 211.152 [Stat Ann 1971 Cum Supp § 7.210]), and since the equalization process at the

---

mission are therein clearly spelled out. Especially pertinent is the following:

"Sec. 150. It shall be the duty of the commission:

"(1) To have and exercise general supervision over the supervisors and other assessing officers of this state, and to take such measures as will secure the enforcement of the provisions of this act, to the end that all the properties of this state liable to assessment for taxation shall be placed upon the assessment rolls and assessed at that proportion of true cash value which the legislature from time to time shall provide pursuant to the provisions of article 9, section 3 of the constitution."

county level does not begin until April (MCLA § 211.34 [Stat Ann 1971 Cum Supp § 7.52]), how is the taxpayer to know in March that the April equalization will produce a "weighted average" less than his own level of assessment?

In *In re Appeal of General Motors Corporation*, 376 Mich 373, we said, "As a practical matter, unequal assessments must be reduced to the average level of assessment if the taxpayer is to have a remedy."

This may be true as far as it goes. But I would say that, "as a practical matter, unequal assessments must be reduced to a *previously ascertained, fixed* and *published* average level of assessment, if the taxpayer is to have a remedy." Constitution 1963, art 9, § 3, provides, inter alia, " * * * The legislature shall provide for the determination of true cash value of such property; * * * ." This wording is new. The Convention Comment explains:

"The first part of the second sentence of this section represents a major change, eliminating the present constitutional requirement of assessment at cash value found in Sec. 7, Article X. The present cash value standard is almost universally ignored.

"The important constitutional objective is uniformity of assessment, regardless of the level at which property is commonly assessed. Permitting the legislature to fix the standard offers the possibility of moving to a more realistic level such as the 50 per cent of cash value currently used by the State Tax Commission. On this basis actual uniformity could be achieved and a taxpayer aggrieved by an assessment over the level prescribed by law could obtain relief. This section provides that the standard set by the legislature shall not exceed 50 per cent." Const 1963, art 9, § 3, MCLA, Convention Comment, p 513.

We shall continue to have these thorny problems until the legislature declares a mandatory statewide level of assessment.

T. G. KAVANAGH, J. concurred with T. E. BRENNAN, J.

BLACK, J. did not sit in this case.