PLYMOUTH TOWNSHIP v WAYNE COUNTY BOARD OF COMMISSIONERS

CITY OF DEARBORN v WAYNE COUNTY BOARD OF COMMISSIONERS

Docket Nos. 68634, 68733. Submitted June 18, 1984, at Detroit.— Decided October 1, 1984.

The Township of Plymouth and the City of Dearborn each sought relief in the Tax Tribunal from the decision of the Wayne County Board of Commissioners regarding the 1982 county equalization of residential real property.

Plymouth Township alleged that discrepancies in the assessments of single family residential property and condominiums violated the constitutional requirement of uniformity of taxation, and that county equalization must take such discrepancies between subclasses into account or that it must rectify individual overassessments.

Dearborn's petition alleged the unconstitutionality of MCL 211.34(2), providing for county equalization of real property by class, MCL 211.34(4), governing appeals of equalization to the Tax Tribunal, and MCL 211.34(1), providing a tax limitation pursuant to the Headlee Amendment.

The cases were heard together by the Tax Tribunal, which

REFERENCES FOR POINTS IN HEADNOTES

[1-3, 6, 9, 11] 72 Am Jur 2d, State and Local Taxation §§ 799, 831 *et seq.*

[2, 14] 72 Am Jur 2d, State and Local Taxation § 782 *et seq.*

[3] 29 Am Jur 2d, Evidence § 123 *et seq.*

72 Am Jur 2d, State and Local Taxation §§ 712, 713.

[4] 72 Am Jur 2d, State and Local Taxation § 833.

[5] 2 Am Jur 2d, Administrative Law § 243.

71 Am Jur 2d, State and Local Taxation § 96 *et seq.*

[6, 8, 11] 71 Am Jur 2d, State and Local Taxation § 150 *et seq.*

[7] 16A Am Jur 2d, Constitutional Law § 29 *et seq.*

[9, 11] 72 Am Jur 2d, State and Local Taxation § 707.

[10] 72 Am Jur 2d, State and Local Taxation § 731.

[12] 73 Am Jur 2d, Statutes § 42.

[13, 15] 72 Am Jur 2d, State and Local Taxation § 759 *et seq.*

found that Plymouth Township had not met its burden of proving that the equalization was improper, and which held that it did not have jurisdiction to decide the questions of the validity of the statutes named by the City of Dearborn. The Tax Tribunal dismissed the petitions. The petitioners appealed separately and the Court of Appeals consolidated the appeals. *Held:*

1. There is no authority requiring equalization by subclass.

2. When reviewing county equalization, the Tax Tribunal does not have authority to rectify individual assessments. The local board of review is the proper forum for such individual adjustments.

3. The burden is on the petitioning taxing unit to show that the equalization complained of is unfair, unjust, inequitable or discriminatory. The Tax Tribunal did not err in finding that Plymouth Township had not met this burden and in finding that the equalization of the township's residential property as a whole was not improper.

4. There was no evidence of fraud in the equalization of Plymouth Township's residential property.

5. The Tax Tribunal correctly held that it did not have the authority to resolve the constitutional claims regarding the validity of the statutes at issue. The Court of Appeals may, however, address the constitutional questions which were not addressed below.

6. The requirement of equalization by class does not violate the constitutional requirement of uniformity of taxation. Uniformity of taxation guarantees equality of the tax burden. It does not require that the procedures used for equalization and for application of the tax limitations of the Headlee Amendment must be the same.

7. The requirement of equalization by class does not violate the Headlee Amendment.

8. The requirement that a petitioning taxing unit must show discrimination before it may prevail in an appeal from an equalization is not improper. Because uniformity is paramount over true cash value determinations the more elaborate appeal system for violations of uniformity than for individual overassessment violations is acceptable.

9. Dearborn failed to show how the standard of proving discrimination placed an unfair burden on it.

10. The relief available if Dearborn is found to be overassessed, that of supplementing the equalized values of the other

county taxing units, would not violate the proscription against assessing property at over 50 percent of true cash value.

11. There is no conclusive presumption of the validity of completed assessment rolls in the context of equalization.

12. The Tax Tribunal is given adequate statutory guidance in adjusting values of taxing units.

13. The tax limitation provision, that if a taxing unit's state equalized valuation exceeds assessed value the unit shall reduce its maximum authorized millage rate, does not violate the uniformity provision by reason of its not accounting for equalization by class, nor does the limitation provision impair a local unit's ability to meet contractual obligations to bondholders. The limitations on impairment of contracts and on reduction of taxes imposed for debt obligation are incorporated in the tax limitation provision.

14. The tax limitation provision is not void for vagueness.

15. It is not necessary that the same methods of valuation be used for all classes of property. The tribunal did not err in excluding evidence of differing methods of valuation for industrial and commercial property.

16. The tribunal's opinion is inadequate in that the tribunal did not explain why it determined that the proofs failed to establish unfair or discriminatory assessments or that the city's assessment was too high.

17. The tribunal need not exclude certificate of occupancy or fix-up costs imposed under a Dearborn city ordinance from a sales ratio study determining true cash value.

18. The tribunal's failure to give reasons for its rejection of Dearborn's claim regarding "creative financing" requires remand for further explanation before appellate review is appropriate.

Affirmed as to Plymouth Township; remanded as to the City of Dearborn.

1. TAXATION — EQUALIZATION — CLASS OF PROPERTY.

Equalization for purposes of property tax assessment is by class of property involved, such as residential, commercial, etc.; there is no authority for equalization by subclass, such as single dwelling and condominium residences (MCL 211.34[2]; MSA 7.52[2]).

2. TAXATION — TAX TRIBUNAL — EQUALIZATION.

The Tax Tribunal, when reviewing county equalization, does not have authority to rectify individual assessments; questions of

individual assessments are to be decided by the local board of review (MCL 211.29, 211.30; MSA 7.29, 7.30).

3. TAXATION — EQUALIZATION — BURDEN OF PROOF.

A township or other local governmental body which appeals an intra-county equalization has the burden of showing to the Tax Tribunal that the equalization is unfair, unjust, inequitable, or discriminatory (MCL 211.34[4]; MSA 7.52[4]).

4. TAXATION — ASSESSMENT — FRAUD.

A tax assessment is fraudulent where it is so unreasonable that the assessor must have known that it was wrong, where it is purposely made too high by prejudice or a reckless disregard of duty or through the adoption of a rule which is designed to operate unequally upon a class, or where it results from use of a method of valuation which does not determine true cash values.

5. CONSTITUTIONAL LAW — GOVERNMENTAL AGENCIES — TAX TRIBUNAL.

Generally, a governmental agency exercising quasi-judicial power does not undertake the determination of constitutional questions or possess the power to hold statutes unconstitutional; therefore, the Tax Tribunal does not have the authority to resolve questions involving the validity of statutes.

6. TAXATION — UNIFORMITY OF TAXATION — EQUALIZATION.

The constitutional requirement of uniformity of taxation simply guarantees equality of the tax burden; it does not require that each procedure for equalization, first by class for purposes of establishment of the assessment roll and then without regard to class for the purpose of applying the so-called Headlee tax limitation amendment, be the same (Const 1963, art 9, §§ 3, 25-31).

7. CONSTITUTIONAL LAW — CONSTITUTIONAL AMENDMENTS.

The drafters of a constitutional amendment are presumed to know about existing laws and constitutional provisions and to have drafted their provision accordingly.

8. TAXATION — UNIFORMITY OF TAXATION.

Uniformity of taxation is paramount over the setting of true cash value.

9. TAXATION — EQUALIZATION — CONSTITUTIONAL LAW.

The supplementation of equalized values of other taxing units in a county when the value of one unit has been found to be too

high and is therefore reduced does not violate the constitutional proscription against assessing property at over 50 percent of true cash value (Const 1963, art 9, § 3).

10. TAXATION — ASSESSMENT ROLLS — EQUALIZATION.

The statutory conclusive presumption of the validity of completed assessment rolls does not prevent the Tax Tribunal from adjusting the assessed values of taxing units for equalization purposes (MCL 211.31; MSA 7.31).

11. TAXATION — EQUALIZATION — REDUCTION OF MILLAGE RATE.

The statutory provision that if a taxing unit's state equalized valuation exceeded its assessed value by five percent or more in 1982 the unit shall reduce its maximum authorized millage rate does not violate the requirement of uniformity of taxation because of the failure to account for equalization by class, nor does the provision impair a local taxing unit's ability to meet contractual obligations to bondholders, nor is the provision void for vagueness (MCL 211.34[1]; MSA 7.52[1]).

12. STATUTES — PRESUMPTION OF CONSTITUTIONALITY.

The strong presumption of constitutionality which attaches to any legislation is only overcome where it is plain that the legislation violates some provision of the constitution, with the constitutionality of the legislation being supported by all possible presumptions not clearly inconsistent with the language and the subject matter.

13. TAXATION — TRUE CASH VALUE.

The method used for determining true cash value for assessment purposes may depend upon the type of property involved and the facts of each case and the same method need not be used for all classes of property.

14. TAXATION — TAX TRIBUNAL — SUFFICIENCY OF FINDINGS.

An opinion of the Tax Tribunal must contain a concise statement of facts and conclusions of law, stated separately; an opinion which merely states that the tribunal has reviewed the evidence and finds it to be insufficient as a basis for relief is not adequate (MCL 205.751[1]; MSA 7.650[51][1]).

15. TAXATION — TRUE CASH VALUE — RESIDENTIAL PROPERTY — LOCAL ORDINANCE.

Certificate of occupancy and fix-up costs to residences made pursuant to a local ordinance requiring an inspection and appropriate repairs before a home may be sold need not be

excluded by the Tax Tribunal in a sales ratio study determining true cash value (MCL 211.27[2]; MSA 7.27[2]).

*James E. McCarthy,* for Plymouth Township.

*Van Til, Kasiborski & Ronayne* (by *Chester E. Kasiborski, Jr.* and *Lawerence R. Van Til),* for the City of Dearborn.

*John D. O'Hair,* Corporation Counsel, and *Robert G. Schuch,* Assistant Corporation Counsel, for respondent.

Before: ALLEN, P.J., and WAHLS and M. WARSHAWSKY,* JJ.

ALLEN, P.J. In this consolidated appeal the Township of Plymouth and the City of Dearborn appeal as of right from an order of dismissal issued by the Michigan Tax Tribunal December 3, 1982, pursuant to GCR 1963, 504.2. Each appeal involves the 1982 county equalization by the Wayne County Board of Commissioners.[1] Centrally involved in each appeal is the propriety of the 1982 county equalization of the residential class of real property.

## Case No. 68634

In late 1981 Plymouth Township was notified that its residential property was underassessed. Therefore, a factor of 2.2212 was used to raise the assessment to 50 percent of true cash value. At first, Plymouth Township acquiesced. However, of the approximately 3,800 petitions filed soon there-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Case No. 68634 involves the appeal of Plymouth Township. Case No. 68733 involves the appeal by the City of Dearborn. The appeals were consolidated by order of this Court on March 21, 1984.

after with the board of review, relief was granted in about 3,200. Apparently even though the residential property as a class was properly equalized, within the class, the subclasses were not. Whereas single family residential properties were on the whole overassessed, condominiums were on the whole underassessed. Consequently, petitioner township filed its claim against respondent with the Tax Tribunal.

Generally, Plymouth Township argues that Const 1963, art 9, § 3, was violated because the single family residential property (about 80 percent of the residential class) was overassessed. Residential property as a class was not only not assessed uniformly, some of it was assessed at over 50 percent of true cash value.

In essence, petitioner[2] contends that county equalization must take into account discrepancies between subclasses of property or, in the alternative, that intra-county equalization must rectify certain individual overassessments. We agree with neither contention. The Legislature provided for equalization *by class,* MCL 211.34(2); MSA 7.52(2). There is no authority requiring equalization *by subclass, viz.,* by condominium and single dwelling residences. Time is of the essence in the equalization process. Until the Legislature provides that equalization is to be performed by subclass (which would require that far more time be expended), equalization by subclass is not required.

Equalization proceedings are not the proper forum to protest individual assessments. *Ypsilanti Twp Supervisor v State Tax Comm,* 386 Mich 343,

---

[2] When dealing with the Plymouth Township case, the word "petitioner" refers to Plymouth Township. Later in this opinion, when dealing with the City of Dearborn case, "petitioner" refers to the City of Dearborn.

355; 192 NW2d 227 (1971). Therefore, when reviewing county equalization, the Tax Tribunal does not have the authority to rectify individual assessments. Because the particular problem raised by petitioner on appeal concerns individual assessments, we believe that the local board of review is the proper forum for correcting the problem. MCL 211.29; MSA 7.29 states: "The board shall do whatever * * * is necessary to make the roll comply with this act." MCL 211.30; MSA 7.30 states: "The board of review shall have full authority, upon its own motion, to change assessments or to add to the roll property omitted therefrom which is liable to assessment in the township." Hence, in the present case, the Plymouth Township board of review had the authority to raise the condominiums' assessments to their proper level even though none of the condominium owners had appealed his own assessment.

Relying strongly on *Negaunee v State Tax Comm,* 337 Mich 169, 175-176; 59 NW2d 136 (1953), petitioner next argues that correcting the discrepancy between condominiums and single family residences by an across-the-board adjustment by the board of review would be arbitrary and capricious. It is true that under *Negaunee* a percentage reduction by the board of review would be impermissible. But *Negaunee* involved a general reduction across-the-board on all assessments, including properties previously adjusted. The instant case does not involve a general reduction. Just as the board permissibly made 3,200 individual adjustments *downward* to single dwelling residences, so too could the board have adjusted *upward* all condominiums. But, whether or not the board may raise all condominiums on a percentage basis is not presently before this Court because the

board never attempted any such action.[3] As it stands, MCL 211.29; MSA 7.29 and MCL 211.30; MSA 7.30 empower the board to at least make individual reassessments of each condominium property and thus rectify the inequity.

Petitioner also argues that because members of the Wayne County Bureau of Taxation were present at the board of review hearings and thus knew that downward adjustments were being made, respondent is estopped from "factoring" petitioner because this factoring effectively raised the assessments adjusted by the board. However, respondent in fact did not reject the board's findings. It merely equalized them with the other governmental units as it is required to do by law. Furthermore, respondent had no authority to contest these matters at the board hearings with individual assessment disputes. The relevant statute for intracounty equalization appeals is MCL 211.34(4); MSA 7.52(4), which requires the Tax Tribunal to determine whether or not "there is a showing that the equalization complained of is unfair, unjust, inequitable, or discriminatory". That showing must be made by the appealing district and the tribunal found here that petitioner had not met its burden. The evidence showed that respondent was aware of the discrepancies between condominiums and other residential properties and attempted to equalize the township assessments with an eye toward this discrepancy. We do not believe that the Tax Tribunal committed an error of law in

[3] "Simply stated, * * * a board of review may bring its judgment to bear upon each of the assessments appearing on the roll but may not treat them in totality. * * *

Adjustments to an assessment roll made by the board of review must be made individually and based upon the individual merit of each assessment." OAG 1981-1982, No 6007, pp 450, 460 (November 18, 1981). Whether or not this conclusion is correct is not presently before this Court.

finding that the equalization of petitioner's residential real property *as a whole* was not improper.

Finally, we must reject petitioner's allegations of fraud. We find no evidence of fraud as that term is defined in *Turner v Lansing Twp,* 108 Mich App 103, 111; 310 NW2d 287 (1981). The township assessor, knowing that condominiums were under-assessed, attempted to relieve the situation by assessing new construction at a uniform level and basically sought to rectify an acknowledged discrepancy. Consequently, we are unable to find "a reckless disregard of duty" or the "adoption of a rule which is designed to operate unequally upon a class".

For the foregoing reasons, the order of dismissal issued by the Tax Tribunal against petitioner is affirmed.

## CASE NO. 68733

The City of Dearborn's amended petition, filed with the Tax Tribunal August 3, 1982, contains five counts, three of which claim that three named statutes are unconstitutional.[4] All three counts were dismissed by the Tax Tribunal on grounds that it did not have jurisdiction to decide them. We agree.

In *Wikman v Novi,* 413 Mich 617, 646-647; 322 NW2d 103 (1982), the Supreme Court declared:

"Generally speaking, *an agency exercising quasi-judicial power does not undertake the determination of constitutional questions or possess the power to hold*

[4] Count II alleges that MCL 211.34(2); MSA 7.52(2), which provides for county equalization of real property separately by class, is unconstitutional. Count III alleges that MCL 211.34(4); MSA 7.52(4), providing for appeals on county equalization to the Tax Tribunal, is unconstitutional. Count IV alleges that MCL 211.34(1); MSA 7.52(1), relating to the Headlee Amendment, is unconstitutional.

*statutes unconstitutional, Dation v Ford Motor Co,* 314 Mich 152; 22 NW2d 252 (1946). However, *the constitutional claims in this case do not involve the validity of a statute.* Rather, plaintiffs' claim is merely an assertion, in constitutional terms, that the assessment was arbitrary and without foundation.

"The law requires that special assessments be made according to the benefits received, see *Dix-Ferndale Taxpayers Ass'n v Detroit,* 258 Mich 390, 395; 242 NW 732 (1932). Plaintiffs' claim is that these special assessments were not made according to the benefits received as required by law. The resolution of this claim involves many fact determinations. The membership of the Tax Tribunal is structured to provide it with experience in resolving these fact issues. The tribunal's *de novo* review gives it the opportunity to rectify any errors in the agency's determination. This review is sufficient to resolve any of the claims raised by the plaintiffs. *Since the issues raised by plaintiffs do not involve the validity of the tribunal's action or a statute,* they do not remove this proceeding from the exclusive jurisdiction of the Tax Tribunal." (Emphasis added.) (Footnote omitted.)

Because petitioner's claims do involve the validity of statutes, the Tax Tribunal correctly concluded it did not have authority to resolve the issues raised. See, *Sessa v State Tax Comm,* 134 Mich App 767; 351 NW2d 863 (1984). But, as both parties point out, where no questions of fact exist and the interests of justice and judicial economy so dictate, this Court may elect to address the constitutional questions that were not addressed below. *Dewitt Twp v Clinton County,* 113 Mich App 709, 713; 319 NW2d 2 (1982); *Henshaw v State Tax Comm (On Remand),* 126 Mich App 806, 810; 338 NW2d 224 (1983). Because the constitutional challenges merit a response, and have been raised in other equalization proceedings by respondent, we next address the three constitutional issues raised.

Petitioner first challenges MCL 211.34(2); MSA

7.52(2) on grounds that it violates the uniformity clause, Const 1963, art 9, § 3, and the Headlee Amendment, Const 1963, art 9, §§ 25-31. It is petitioner's theory that the statute requiring equalization by class violates the uniformity clause because the same property must then be considered without reference by class for purposes of applying the Headlee tax limitation amendment. Furthermore, the statute requires that real property, but not personal property, be equalized by class.

In a sense, petitioner is right. According to the way in which the petitioner defines "uniform", the system is not in fact "uniform". However, petitioner's definition of "uniform" is not the one to be applied to Const 1963, art 9, § 3. As used in our constitution, "uniformity" simply guarantees equality of the tax burden. It does not mean that each procedure used must be the same. As stated in *Huron-Clinton Metropolitan Authority v Bds of Supervisors of Five Counties,* 304 Mich 328, 336; 8 NW2d 84 (1943), "Uniformity in taxing implies equality in the burden of taxation". See, also, *East Grand Rapids School Dist v Kent County Tax Allocation Bd,* 415 Mich 381, 395-396; 330 NW2d 7 (1982); *Allied Supermarkets, Inc v Detroit,* 391 Mich 460, 467; 216 NW2d 755 (1974). Petitioner has failed to show how the statute in question affects the equality of the tax burden itself. Hence, petitioner's argument must fail. We further note that petitioner's argument was likewise rejected in *O'Reilly v Wayne County,* 116 Mich App 582; 323 NW2d 493 (1982), *lv den* 418 Mich 904 (1984). Likewise, for the same reasons, we find that equalizing real property by class but personal property without regard to class does not violate the uniformity clause either.

Second, petitioner argues that MCL 211.34(2); MSA 7.52(2) violates the Headlee Amendment. Petitioner claims that before this statute was enacted, when real property was equalized without regard to class, certain classes of property which were rapidly increasing in value, *e.g.,* residential, were able to hide behind certain other classes of property, *e.g.,* commercial. However, with equalization by class, this buffer no longer exists. Hence, equalization by class has caused the assessed value of the residential class to increase over the inflation rate in violation of the Headlee Amendment.

In effect, petitioner is arguing that the Headlee Amendment was designed to perpetuate everything in the status quo even if it was unfair. But petitioner has no vested interest in an unfair system—one that violates the uniformity clause. The drafters of a constitutional amendment are presumed to know about existing laws and constitutional provisions and thus to have drafted their provision accordingly. *Council of the City of Saginaw v Saginaw Policemen & Firemen Retirement System Trustees,* 321 Mich 641, 647; 32 NW2d 899 (1948). Hence, we conclude that the Headlee Amendment was not intended to perpetuate a system which violates the uniformity clause. Therefore, MCL 211.34(2); MSA 7.52(2) does not violate the Headlee Amendment.

Third, petitioner claims that MCL 211.34(4); MSA 7.52(4), which governs equalization appeals, is unconstitutional for five reasons. We reject each one.

MCL 211.34(4); MSA 7.52(4) requires that a petitioner make some showing of discrimination to prevail. Petitioner argues that it should only have to show that its property was assessed at over 50 percent of true cash value after county equaliza-

tion. Furthermore, petitioner argues, the statute fails to provide it with a remedy in case all of its property has been assessed at over 50 percent of true cash value. Although the Tax Tribunal has some power to make adjustments, the statute states:

"The deductions or additions shall decrease or increase the state equalized valuation of the local unit affected but shall not increase or decrease the total state equalized valuation of the county in the case of an appeal under this section to the state tax tribunal."

To the extent that this statute would prevent the Tax Tribunal from adjusting downward overassessed property, petitioner has not shown how it is aggrieved. After a local governmental unit has assessed the property, the system provides three additional safeguards to assure that property is not assessed at over 50 percent of true cash value, *viz.:* the county equalization process, State Tax Commission review, and individual assessment appeals. Property being overassessed is an individual's problem, not a local governing unit's. It is the individual property holder who is overtaxed and not the local governing unit. Hence, the Legislature has provided a more elaborate appeal system for uniformity violations than for overassessment violations. Such a scheme is acceptable because uniformity is paramount over true cash value. *In re Appeal of General Motors Corp,* 376 Mich 373, 378-379; 137 NW2d 161 (1965).[5]

---

[5] Petitioner argues that this statement is no longer valid because *Appeal of General Motors* construed the 1908 constitution which required assessments at true cash value rather than the present 1963 constitution which requires assessments at 50 percent of true cash value. However, whether property is assessed at 50 percent of true cash value or at 100 percent of true cash value does not affect the primacy of the uniformity principle. In fact, the Supreme Court adhered to *Appeal of General Motors* even when making a decision

Second, petitioner argues that in requiring a local governing unit to prove discrimination, the statute places on it an unfair burden. For support, petitioner cites *DeWitt Twp Supervisor v State Tax Comm*, 397 Mich 576, 580; 244 NW2d 920 (1976):

In addition to the legal impediment, plaintiff-appellant has a massive practical impediment. To protect itself from discrimination under the terms proposed by appellee would require it to be conversant with the tax assessment procedures, methods and results not just within its own township but within all of the other taxing units in Clinton County. We cannot read the legislative enactment to require such an obviously burdensome result."

However, the requirement found in *DeWitt Twp* to be too burdensome was the five-day appeal period for intra-county equalization. Petitioner has not shown how, in proving a discrimination case, either its own[6] or any other, the standard itself of proving discrimination is too burdensome.

Third, petitioner argues that to support its burden under MCL 211.34(4); MSA 7.52(4), the only relief that could be granted, *viz.,* supplementing the equalized values of the other units, would violate the constitutional proscription against assessing property at over 50 percent of true cash value. This argument was rejected in *Ironwood v*

under the 1963 constitution. *Ypsilanti Twp Supervisor v State Tax Comm,* 386 Mich 343, 355-356; 192 NW2d 227 (1971). Furthermore, the Convention Comment to Const 1963, art 9, § 3, states: "The important constitutional objective is uniformity of assessment, regardless of the level at which property is commonly assessed." 2 Michigan Comp Laws Anno, p 513.

[6] Petitioner's own case was that respondent had improperly included certain items in determining true cash value. Such a claim can be adequately established before the Tax Tribunal without presenting evidence as to how other local governing units were treated.

*Gogebic County Bd of Comm'rs,* 84 Mich App 464, 472; 269 NW2d 642 (1978).

Fourth, petitioner claims that MCL 211.34(4); MSA 7.52(4) conflicts with MCL 211.31; MSA 7.31, which provides for a conclusive presumption for completed assessment rolls not appealed. In other words, claims petitioner, MCL 211.31; MSA 7.31 prevents the Tax Tribunal from adjusting the assessed values of property on the rolls of other units. We reject this interpretation. This statute does not present a conclusive presumption when dealing with equalization. As stated before, uniformity has primacy.

Fifth, petitioner claims that MCL 211.34(4); MSA 7.52(4) does not give the Tax Tribunal sufficient guidance as to adding value to other units. However, the statute, in fact, does provide guidance:

"If the state tax tribunal, after the hearing, decides that the valuations of the county were improperly equalized, it shall proceed to make deductions from, or additions to, the valuations of the respective townships, cities, or school districts as may be considered proper, and in so doing the tribunal shall have the same powers as the county board of commissioners had in the first instance."

Petitioner has failed to show how the Tax Tribunal has in fact been unable to perform its duties.

Petitioner next claims that MCL 211.34(1); MSA 7.52(1), as amended by 1981 PA 213, is unconstitutional. Once again, we reject each challenge.

Petitioner claims that this statute too, like MCL 211.34(2); MSA 7.52(2), discussed earlier in this opinion, violates the uniformity clause. The statute provides that if a taxing district's state equalized valuation exceeds assessed value by five percent or

more in 1982, then the district shall reduce its maximum authorized millage rate so that total property taxes do not exceed that which would have been levied on the assessed value. Petitioner argues that this clause violates the uniformity clause because it does not take equalization by class into account. We reject it for the same reasons we rejected petitioner's claim that MCL 211.34(2); MSA 7.52(2) violates the uniformity clause. See, also, *O'Reilly, supra.*

Second, petitioner claims that the 1981 PA 213 limitation on the authorized millage rate impairs a local unit's ability to meet contractual obligations to bondholders. Const 1963, art 9, § 6; Const 1963, art 9, § 10. We respectfully disagree. 1981 PA 213 provides for a reduction in the maximum authorized millage rate "as determined after any reduction caused by § 34d". When we look to § 34d, MCL 211.34d; MSA 7.52(4), we find it provides that there shall be no reduction or tax limitation "to taxes imposed for the payment of principal and interest on bonds or other evidences of indebtedness * * * or contract obligations". Because § 34d mentions the constitutional limitation on impairment of contracts and the limitation on the reduction of taxes imposed to meet debt obligations, it is reasonable to conclude that 1981 PA 213, by its reference to § 34d, incorporates such.

There is a strong presumption of constitutionality which attaches to any legislation, and this presumption is only overcome where it is "plain that [the legislation] violates some provisions of the Constitution [, with] the constitutionality of the act [being] *supported by all possible presumptions not clearly inconsistent with the language and the subject matter".* (Emphasis supplied.) *Oakland County Taxpayers' League v Oakland County*

*Supervisors,* 355 Mich 305, 323; 94 NW2d 875 (1959). In light of this rule, respondent's construction of 1981 PA 213 places it on firm constitutional ground. Neither Const 1963, art 1, § 10, nor art 9, § 6 is violated.

Alternatively, petitioner's argument is speculative. Petitioner argues that such a tax limitation *"could* reduce the tax revenues received [by local units of government] and hamper their ability" to meet obligations. Petitioner puts forth no concrete facts as to the effect that 1981 PA 213 *will* have on the City of Dearborn for 1982. There is no indication that special assessments and the like have been affected directly by the act, nor is there any evidence that a reduction in the maximum authorized millage rate indirectly affects such obligations.

Third, petitioner contends that MCL 211.34(1); MSA 7.52(1), as amended by 1981 PA 213, is void for vagueness. Again we must disagree. We find that the statute is comprehensible to a person of ordinary intelligence.

Petitioner next argues that the Tax Tribunal erred in excluding evidence of respondent's equalization of other classes of real property. This issue arose when the tribunal disallowed evidence concerning valuations placed on industrial and commercial class property. Admittedly, evidence concerning other classes of property may have some probative value. However, bearing in mind that there are five acceptable methods for determining true cash value for assessment purposes, and whether a particular method is appropriate depends upon the type of property involved and the facts of each case, *Presque Isle Harbor Water Co v Presque Isle Twp,* 130 Mich App 182, 190-191; 344 NW2d 285 (1983), evidence that different methods

of assessing were employed for residential property than were used for commercial and industrial property does not prove discrimination. The same method need not be used for all classes of property.

Under Tax Tribunal Rule 410, 1979 AC, R 205.1410, "unduly repetitious evidence" may be excluded. Other evidence introduced by petitioner more directly tended to show discrimination than the fact that different methods of assessing were used for different classes of property. Since time is of the essence in property tax disputes and since no adjustment could have been made to petitioner's industrial and commercial classes of property, we cannot say that the tribunal abused its discretion. Without more indication from petitioner as to how it intended to establish discrimination, we are unable to conclude that the tribunal committed an error of law.

Lastly, petitioner contends that the tribunal's opinion in the instant case is inadequate, and further, that the tribunal erred by dismissing petitioner's case. We agree with the first contention. The tribunal's sparse opinion in this highly complex area merely recites the issues and concludes that the proofs failed to establish unfair or discriminatory assessments or that the City of Dearborn was equalized in excess of 50 percent of true cash value. As stated in *Almira Twp v Benzie County Tax Allocation Bd,* 80 Mich App 755, 761; 265 NW2d 39 (1978), "Merely stating that the tribunal has reviewed the evidence and finds it to be insufficient as a basis for relief is *not* adequate". (Emphasis in original.) In other words, the opinion in the present case violated MCL 205.751(1); MSA 7.650(51)(1) because it did not contain "a concise statement of facts and conclusions of law, stated separately".

Because the Tax Tribunal's opinion is inadequate, we are unable to review adequately and fully petitioner's claim that the tribunal erred by granting the city's motion to dismiss. Whether or not the motion to dismiss was properly granted depends upon whether petitioner's residential property was properly equalized. Petitioner had argued and presented evidence before the tribunal that residential property was not properly equalized in three ways: (1) personal property was included in the valuations despite language prohibiting such practice in MCL 211.27(3); MSA 7.27(3); (2) "certificates of occupancy", repairs and fix-up costs were included in arriving at true cash value; and (3) respondent refused to consider the effects of creative financing in arriving at true cash value.

In tax year 1981, petitioner had made a similar claim concerning the inclusion of personal property as an element of valuation. That argument was rejected by the tribunal on grounds, *inter alia,* that petitioner had not filled out the proper forms mandated by the state.[7] However, for 1982, petitioner followed the correct procedure. Yet the Tax Tribunal dismissed the argument without giving any reason. This in itself is grounds for our remand to the Tax Tribunal to more fully explain its decision. On remand, the Tax Tribunal should write a new opinion and explain to us why it rejected petitioner's personal property claim.

Before a home owner in the City of Dearborn may sell his home, city ordinance No. 63-1439 requires that the home be inspected and appropriate repairs be made. It is petitioner's claim that

---

[7] Petitioner's appeal from the 1981 county equalization is presently pending before this Court. Docket No. 65108. *City of Dearborn v Wayne County Bd of Comm'rs.*

repairs and fix-up costs made pursuant to this ordinance should be excluded in a sales ratio study determining true cash value. Otherwise, the final true cash value figure would be inflated because one must assume that all real property in the city, including the houses not for sale, have in fact already made these repairs. We disagree.

Certificate of occupancy and fix-up costs made pursuant to the ordinance are largely duplicative of statutory costs. Certain costs which are known to the assessor shall be excluded from true cash value, MCL 211.27(2), subds (a) through (o); MSA 7.27(2), subds (a) through (o). Items (a) through (o) of § 27(2) are duplicative of the fix-up costs required under the ordinance. Thus, it would be error to exclude such costs under both the ordinance and the statute. Furthermore, the statute limits deductions for such costs to repairs which "are not part of a structural addition or completion". In other words, the Legislature has in effect said that repairs to structural additions and completions are to be considered when determining true cash value. Therefore, we hold that the tribunal need not deduct certificate of occupancy and fix-up costs imposed under the city ordinance. Deductions for statutory costs (a) through (o), if not part of a structural addition or completion, shall be excluded when determining true cash value. However, because petitioner filled out the proper forms for 1982, those costs are not at issue in the instant case.

This brings us to the thorny issue of creative financing. Did the Tax Tribunal err by excluding evidence of such arrangements? Unfortunately, the tribunal failed to tell us why it rejected such a claim. Was it because it believed that there were insufficient samples upon which the respondent

could reasonably make an overall downward adjustment in the sales price? Or was it because the tribunal didn't believe creative financing could be considered in determining true cash value under any circumstances? We simply don't know, and until we know, we are unable to authoritatively address the issue.

However, we do know that in *Washtenaw County v State Tax Comm,* 126 Mich App 535; 337 NW2d 565 (1983), this Court in a 2-1 decision ruled that creative financing must be considered in determining true cash value. In *Antisdale v Galesburg,* 109 Mich App 627, 633-634; 311 NW2d 432 (1981), *lv gtd* 418 Mich 874 (1983), the opposite conclusion was reached. In its brief, respondent argues that *Washtenaw County* was incorrectly decided because matters like creative financing do not in fact affect whether or not the taxation was uniform. If everyone is taxed under the same standard, says respondent, it matters not whether creative financing is considered; the taxation is uniform and petitioner cannot sustain its claim under MCL 211.34(4); MSA 7.52(4). We do not entirely agree. It appears to us that, at least in inter-county equalization, the county which uses creative financing more often will be discriminated against when compared with the county in which it is used less or not used at all.

Until we know the reason why the Tax Tribunal rejected consideration of creative financing, we need not decide whether to follow *Washtenaw* or *Antisdale.*[8] Furthermore, on oral argument, in response to a question from this Court, counsel for petitioner responded that creative financing might be considered in intra-county equalization but that

---

[8] This jurist still adheres to his dissent in *Washtenaw* and believes *Antisdale* represents the better reasoning.

there was an insufficient number of samples taken to justify an across-the-board reduction in property value as requested by petitioner. Therefore, on remand we direct the Tax Tribunal to set forth its reasons for excluding the creative financing proofs which petitioner sought to introduce. We also suggest that, if the Tax Tribunal feels creative financing matters should be considered, it set forth how a county is to properly consider such financing during the intra-county equalization process.

For the foregoing reasons, Case No. 68733 is remanded to the Tax Tribunal with instructions to proceed in accordance with this opinion.

No costs in either Case No. 68634 or No. 68733, questions of public interest being involved.

We retain jurisdiction.