3333 MOORES RIVER DRIVE ASSOCIATION v CITY OF LANSING

Docket No. 72869. Submitted December 10, 1984, at Lansing.—Decided March 27, 1985.

In January, 1980, 3333 Moores River Drive Association purchased 82 of the 84 units of what was then a rental apartment complex with the intention of converting the apartments into condominiums. In 1980, 18 or 19 of the units were sold as condominiums, and in 1981, 15 units were sold. In 1982, three units were sold, but three units were taken back because of land contract forfeitures. The unsold units were either rented or were vacant. The City of Lansing assessed the 58 unsold units for tax year 1981 at $1,741,400, reflecting a true cash value of $3,482,800, and the 48 unsold units for tax year 1982 at $1,442,300, reflecting a true cash value of $2,884,600. The city arrived at the assessed value by assigning an individual assessment to each unsold unit, using the sale price of comparable units in the complex, and then taking the aggregate total of those individual assessments. A petition was filed with the Michigan Tax Tribunal by 3333 Moores River Drive Association, disputing the 1981 and 1982 tax assessments. While agreeing that a market approach was the proper assessment method, petitioner contended that there was no market for individual condominiums in the years in question and that the true cash value should be based on the assumption that the entire balance of the complex would be sold to an investor. Petitioner presented the testimony of an expert that, using projected sales of other apartment complexes in the area, the true cash value of the remaining unsold units would be $1,280,000 for 1981 and $960,000 in 1982. The Tax Tribunal rejected petitioner's reasoning, accepted the city's method of assessment as being the proper method under the circumstances, and

REFERENCES FOR POINTS IN HEADNOTES

[1] 72 Am Jur 2d, State and Local Taxation § 753 et seq.
Sale price of real property as evidence in determining value for tax assessment purposes. 89 ALR3d 1126.

[2] 15A Am Jur 2d, Condominiums and Co-operative Apartments § 48 et seq.
Real estate taxation of condominiums. 71 ALR3d 952.

affirmed the city's 1981 and 1982 assessment of the subject property. Petitioner appealed. *Held:*

1. Property is assessed for property tax purposes in accordance with its true cash value. True cash value is synonymous with fair market value. Any method of determining true cash value which is recognized as accurate and reasonably related to fair market valuation is an acceptable indicator of true cash value.

2. Since the parties agree that the highest and best use of the subject property is as individual condominium units and that a market approach is the proper method of valuation under these circumstances, and since the Legislature has, by mandating individual assessment, evidenced an intent that condominium units should be individually valued, the Tax Tribunal properly accepted the city's method of valuation as the means to ascertain the assessed valuation of the unsold condominium units during the subject years, the sale of individual units as condominiums during the subject years disproving petitioner's contention that there was no market for those units during the subject years.

3. Since the petitioner did not raise before the Tax Tribunal the question of whether the land contract sales should be discounted, and since there were a sufficient number of cash sales of units to allow a reasonable determination of the true cash value, there was no error in the Tax Tribunal adopting the city's appraisal.

Affirmed.

1. TAXATION — TRUE CASH VALUE — FAIR MARKET VALUE.

Property is assessed for taxation purposes in accordance with its true cash value; while true cash value is statutorily defined as the usual selling price that could be obtained in a private sale, the concept of true cash value is synonymous with fair market value and any method of determining true cash value which is recognized as accurate and reasonably related to fair market valuation is an acceptable indicator of true cash value.

2. TAXATION — CONDOMINIUMS — UNSOLD CONDOMINIUM UNITS — TRUE CASH VALUE — FAIR MARKET VALUE.

The true cash value of unsold condominium apartment units, for taxation purposes, is properly determined by using a market value approach based upon the aggregate total of the assessed fair market value of the individual apartment units, rather than by valuing the unsold apartment units as a group using a market value approach with rental apartments as comparables, where there have been sales of some of the condominium units,

thereby establishing both that there is a market for the units and a source of recent comparable sales from which the fair market values of the remaining unsold units could be derived (MCL 559.231; MSA 26.50[231]).

*Robert C. Kerzka,* for petitioner.

*Alvan P. Knot,* for respondent.

Before: BEASLEY, P.J., and R. B. BURNS and S. C. GARDNER,* JJ.

PER CURIAM. Petitioner appeals from several orders of the Michigan Tax Tribunal which upheld ad valorem property tax assessments for tax years 1981 and 1982 made by respondent, City of Lansing, on condominium units owned by petitioner. The property involved consists of eight buildings containing a total of 12 one-bedroom, 56 two-bedroom, and 16 three-bedroom units. In January, 1980, petitioner purchased 82 of the 84 units of what was then an apartment complex for $3,519,000 with the intention of converting them into condominiums. Petitioner's expectation that at least 50% of the existing tenants would buy a condominium was not realized. There were 18 or 19 units sold in 1980 and 15 units sold in 1981. An unspecified number of unsold units were rented during the tax years in question. In 1982, three units were sold, three units were taken back by petitioner due to land contract forfeitures, one building was completely rented, and one building was essentially vacant. At the time of the hearing, the advertised sale prices were $41,900—$42,900 for one-bedroom units, $59,400—$64,250 for two-bedroom units, and $82,900 for three bedroom units.

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

For tax year 1981, the city assessed petitioner's 58 unsold units at $1,741,400, reflecting a true cash value (TCV) of $3,482,800. For tax year 1982, the city assessed the remaining 48 unsold units at $1,442,300, reflecting a TCV of $2,884,600.

Petitioner disputes these assessments, contending that there was no market for the individual condominium units for the years in question and TCV should be based on the assumption that the entire balance of the complex would be sold to an investor. According to Richard A. Cherney, petitioner's expert, TCV was estimated at $1,280,000 for the 58 units for tax year 1981, and $960,000 for the 48 unsold units for tax year 1982, assuming that the entire complex would be sold to an investor for approximately $20,000 per unit in either of the tax years. The $20,000 estimate was based on projected sales of apartment complexes located in the area.

Respondent argues that, during the tax years in question, there were a sufficient number of units sold within the complex to establish market value. Utilizing these sales, city appraiser Kenneth J. Stock determined the TCV to be $42,000 for each one-bedroom unit, $58,000 for each two-bedroom unit, and $79,000 for each three-bedroom unit.

The tribunal agreed with respondent and stated:

"This Tribunal holds that for the 1981 and 1982 tax years, the Respondent's market approach presents the most accurate estimate of true cash value, as it has utilized the most comparable properties—individual sales of identical properties to the subjects, recently sold, in the same complex as the subjects, rather than the utilization of whole apartment projects sold to single entitites. The Respondent's evidence sufficiently corroborates the values assigned in the assessments, and those assessments are therefore accepted by this Tribunal as the equivalent of true cash value of the subject properties."

In *Northwood Apartments v Royal Oak,* 98 Mich App 721, 725; 296 NW2d 639 (1980), some applicable concepts were summarized:

"For the purposes of taxation, property is to be assessed in accordance with its true cash value. Const 1963, art 9, § 3, *Ramblewood Associates v Wyoming,* 82 Mich App 342, 344; 266 NW2d 817 (1978). True cash value is defined as: '[T]he usual selling price at the place where the property to which the term is applied is at the time of assessment, being the price which could be obtained for the property at private sale, and not at forced or auction sale.' MCL 211.27; MSA 7.27. The legislative test, however, is not exclusive. *Consumers Power Co v Big Prairie Twp,* 81 Mich App 120, 129; 265 NW2d 182 (1978), *lv den* 403 Mich 848 (1978).

"The concept of true cash value is synonymous with fair market value. *CAF Investment Co v State Tax Comm,* 392 Mich 442, 450; 221 NW2d 588 (1974). Any method of determining true cash value which is recognized as accurate and reasonably related to fair market valuation is an acceptable indicator of true cash value. *Safran Printing Co v Detroit,* 88 Mich App 376, 380; 276 NW2d 602 (1979)."

The taxpayer has the burden of proving TCV. MCL 205.737(3); MSA 7.650(37)(3).

This Court's authority to review tribunal valuation decisions regarding TCV is limited, in the absence of fraud, to determining whether the tribunal committed an error of law or adopted a wrong principle. *Northwood Apartments, supra,* p 724. The factual findings of the tribunal are final if supported by competent and substantial evidence. Const 1963, art 6, § 28.

The parties agree that the highest and best use of the subject property is as individual condominium units. Each relied on the market approach to valuation but disagreed on which properties are the best comparable properties.

Petitioner argues that the unsold units should

be valued as a group rather than individually. Petitioner admits that the Condominium Act, MCL 559.101 *et seq.;* MSA 26.50 *et seq.,* requires individual assessments, but argues that this does not necessarily require individual valuation. MCL 559.231; MSA 26.50(231) provides in pertinent part as follows:

"(1) *Special assessments and property taxes shall be assessed against the individual condominium units identified as units of the condominium subdivision plan and not on the total property of the project or any other part of the project,* except for the year in which the condominium project was established subsequent to the tax day. Taxes and special assessments which become a lien against the property in that year subsequent to the establishment of the condominium project shall be expenses of administration of the project and paid by the co-owners as provided in section 69. The taxes and special assessments shall not be divided or apportioned on the tax roll any provisions of any law to the contrary notwithstanding.

"(2) Special assessments and property taxes in any year in which the property existed as an established condominium project on the tax day shall be assessed against the individual condominium unit, notwithstanding any subsequent vacation of the condominium project. Condominium units shall be described for such purposes by reference to the condominium unit number of the condominium subdivision plan and the caption of the plan together with the liber and page of the county records in which the approved master deed is recorded. Assessments for subsequent real property improvements to a specific condominium unit shall be assessed to that condominium unit description only. *For property tax and special assessment purposes, each condominium unit shall be treated as a separate single unit of real property and shall not be combined with any other unit or units and no assessment of any fraction of any unit or combination of any unit with other units or fractions of any unit shall be made, nor shall any division or split of the assessment or taxes of any single*

*condominium unit be made notwithstanding separate or common ownership of the unit."* (Emphasis supplied.)

This section indicates that each unit must be treated separately for property tax purposes. While the statute does not expressly state that the units must be valued separately, the assessment process is so intertwined with the valuation process that the legislative intent is clear.

Further, petitioner's argument that there was no market for the unsold units is disproved by the 18 or 19 units sold in 1980, and the 15 units sold in 1981. These sales provided proper comparables based on the market approach. We find the tribunal properly accepted the city's final valuation based on a reasonable estimate of the value of each unit.

While our resolution of the first issue obviates the need to address the many other claims of error raised by petitioner which attack the method used to determine TCV, there is one other issue that requires discussion.

Most of the 1980 sales were cash sales, while most of the 1981 sales were land contract sales. About one-half of the 15 units sold in 1981 were sold below the listed price. However, this discounting was not due to the fact that they were cash sales. Petitioner argues that the method used to determine TCV was flawed because the land contract sales were not discounted to present cash value. Respondent contends that there were a sufficient number of cash sales (approximately 50%) to allow the tribunal to make a reasonable determination of TCV.

In *Antisdale v Galesburg,* 420 Mich 265; 362 NW2d 632 (1985), the Court found the tribunal adopted a wrong principle in its determination of the TCV of an apartment complex financed by a

low interest federally subsidized mortgage. The tribunal had adopted a variant of market valuation and valued the subject property by reference to the selling price of properties also subject to mortgages well below market interest rates. The selling price was determined by adding the outstanding mortgage assumed by the purchasers to the amount of consideration above the mortgage balance paid to the seller. The Court stated:

"The fatal flaw in respondent's analysis is in its claim that the outstanding mortgage balance of a mortgage bearing an interest rate well below market rates has a dollar for dollar relationship to the value of the property. We do not accept that claim. Assuming a mortgage bearing a 1% interest rate in the market of 1977, 1978, or even today, does not translate into the assumption of a liability, or a value to the seller, in the amount of principal which remains to be paid on that 1% mortgage. * * *

"By failing to discount the outstanding mortgage balance of the comparable properties to the actual cost to the investor the tax tribunal adopted a wrong principle." 420 Mich 280-282.

In *Washtenaw County v State Tax Comm,* 126 Mich App 535; 337 NW2d 565 (1983), *lv gtd* 419 Mich 864 (1984), this Court addressed a similar issue. The tax commission had determined that the state equalized value of various properties should be higher than the county equalized value. The majority held that the tax commission erred in refusing to discount the sales price of the subject properties to reflect various creative financing techniques.

Here, the parties agree that the market approach is the method best suited to determine TCV in this case. The petitioner did not raise the

issue of discounting for land contract sales before the tribunal. While one-half of the 15 units sold in 1981 were sold below the listed price, this was not due to discounting for cash sales. For these reasons, and since a sufficient number of cash sales existed to allow a reasonable determination of TCV, we find the tribunal correctly embraced the city's appraisal.

Affirmed.