FIRST CITY CORPORATION v CITY OF LANSING

Docket No. 97878. Submitted January 7, 1988, at Lansing. Decided
     March 9, 1988.

     The City of Lansing assessed an apartment building owned by
     First City Corporation at $210,800 for the 1982 and 1983 tax
     years, representing fifty percent of the true cash value of the
     property. First City Corporation filed a petition with the Tax
     Tribunal for a review of the assessments. The tribunal issued
     an opinion and judgment in which it affirmed the 1982 and
     1983 assessments and the true cash value of $421,600. Peti-
     tioner appealed and the Court of Appeals reversed and re-
     manded for further consideration. Unpublished opinion per
     curiam of the Court of Appeals, decided April 29, 1986 (Docket
     No. 83224). Thereafter, the tribunal issued a decision on re-
     mand, affirming the original assessments. Petitioner appealed.

     The Court of Appeals held:

     1. The tribunal's decision was supported by competent, mate-
     rial and substantial evidence and complied with the Court of
     Appeals April 29, 1986, opinion directing it to inquire whether
     there was competent, material and substantial evidence to
     support its decision.

     2. The Tax Tribunal properly selected the market approach
     as the most accurate method of valuation under the circum-
     stances of this case.

     3. The tribunal did consider functional obsolescence in the
     valuation of the property as directed in the Court of Appeals
     April 29, 1986, opinion.

     Affirmed.

1. TAXATION — TAX TRIBUNAL — APPEAL.
     The standard of review for Tax Tribunal decisions in property tax
     valuation cases is limited; the question, when fraud is not

REFERENCES
Am Jur 2d, State and Local Taxation §§ 753 et seq., 787.
Requirement of full-value real property taxation assessments. 42
     ALR4th 676.
See also the annotations in the Index to Annotations under Prop-
     erty; Taxes.

alleged, is whether the tribunal committed an error of law or adopted a wrong principle; the Court of Appeals accepts as final the tribunal's factual findings provided they are supported by competent, material and substantial evidence (Const 1963, art 6, § 28).

2. TAXATION — PROPERTY TAX — TRUE CASH VALUE — BURDEN OF PROOF.

The burden of proof is on the taxpayer in a property tax valuation case to establish the true cash value of his property (MCL 205.737[3]; MSA 7.650[37][3]).

3. TAXATION — TAX TRIBUNAL — DECISIONS.

A Tax Tribunal decision must provide a concise statement of facts and conclusions of law (MCL 24.285, 205.726, 205.751; MSA 3.560[185], 7.650[26], 7.650[51]).

4. TAXATION — TAX TRIBUNAL — PROPERTY TAX — TRUE CASH VALUE.

It is the duty of the Tax Tribunal in a property tax valuation case to make an independent determination of true cash value, utilizing an approach which provides the most accurate valuation under the circumstances of the individual case.

5. TAXATION — CASH VALUE — USUAL SELLING PRICE — TRUE CASH VALUE — FAIR MARKET VALUE.

"Cash value" means "usual selling price," which is the price which would be obtained at a private sale rather than at a forced sale; "true cash value" and "fair market value" are synonymous.

*Thrun, Maatsch & Nordberg, P.C.* (by *Patrick J. Berardo* and *Gordon W. VanWieren*), for petitioner.

*Alvan P. Knot,* for respondent.

Before: CYNAR, P.J., and BEASLEY and K. B. GLASER,* JJ.

PER CURIAM. Petitioner appeals as of right from the Michigan Tax Tribunal's judgment on remand from the Court of Appeals affirming respondent's

---

* Circuit judge, sitting on the Court of Appeals by assignment.

1982 and 1983 tax assessments of petitioner's twenty-eight-unit apartment building. We affirm.

This action arose out of a dispute concerning the 1982 and 1983 assessments of petitioner's apartment building located at 1302 East Miller Road in the City of Lansing, Michigan, known as Southwind Apartments. The property was assessed at $210,800 for the 1982 and 1983 tax years, representing fifty percent of the true cash value (TCV). Petitioner contended that the TCV for the property should be $290,000 for each year, meaning that the assessment should have been based on $145,000 rather than the $210,800 figure.

At the hearing, petitioner offered the testimony of Kenneth Fowler, who purchased the property for petitioner in 1974 for approximately $267,000. Although the location of the building was not bad, Fowler stated that it had numerous deficiencies which decreased the property's value. The property was built in 1973 on a very small lot with virtually no green area. The parking lot was in poor condition and the apartments were small. The heating system made the apartments difficult to heat, they had very little or no insulation, and the sewer clogged continuously and backed up into the apartments. The appliances were worn out, particularly the dishwashers, which leaked and caused severe problems. In 1979, the last year in which petitioner was directly involved in rentals at the building, there was a strong rental market, but the building had less then ninety percent average occupancy rate. Fowler called the property "a classic example of a building that is functionally obsolescent," the "bottom of the barrel" in relation to neighboring apartment buildings.

In December, 1979, petitioner sold the property to Paul and Gloria Robbins under a land contract for $355,000. The amount of the down payment,

$35,000, was low because petitioner encountered a difficult time in selling the property. The contract required monthly payments and periodic principal payments. The Robbinses made monthly payments until December, 1982, but failed to make two periodic payments of $8,200 on January 15, 1981, and January 15, 1982. The Robbinses and petitioner tried selling the property in 1981 and 1982. An offer of $250,000 was rejected by both.

In January, 1983, petitioner foreclosed on the property. A receiver was appointed to manage the property. The receiver listed the property with various real estate brokers. On July 31, 1983, the property was sold on a land contract for $305,000 to William Lockwood. Fowler regarded both land contract prices as having been too high, but the buyers presumably paid those prices because they thought they could "turn the property around" through good management.

On April 15, 1983, the city's board of review assessed the property for tax year 1982 at $210,800, representing fifty percent of the TCV. This was also the assessed value for the 1983 tax year. On June 3, 1984, petitioner filed a petition with the Tax Tribunal for a review of the assessments. Petitioner requested that the assessments be reduced to reflect fifty percent of the property's TCV.

At the hearing, petitioner contended that the city's assessment level exceeded fifty percent of the TCV because it failed to consider the actual income of the property and other appropriate market data. Robbins had provided petitioner with an unverified 1981 total income from the building of $60,950, a figure which appeared reasonable to Fowler. Fowler, however, did not verify this figure. Robbins had written this figure on a legal pad and sent it to petitioner. Petitioner determined the

present value of the property to be $230,766, utilizing the income method of valuation with a capitalization rate of twelve percent and net income of $27,692. Petitioner ultimately conceded that the TCV was $290,000.

The Lansing City Assessor appraised the property for 1982, and indicated the same value also applied to the 1983 tax year based on his subsequent appraisal. He considered all three traditional approaches to valuation, i.e., market, cost and income, but thought the market approach was the most useful, given a strong market for similar properties in Lansing.

The cost approach to valuation, made using the Marshall Valuation Service Manual, resulted in a value of $499,000 when land value was added. The assessor took this as an upper limit. He never used the cost approach alone to value a property.

In using the income approach, the assessor considered "economic rent," essentially the rent that comparable units produced elsewhere in Lansing at the same time. He had no idea what rents were actually charged at Southwind Apartments, but based on his market assumptions, including a five percent allowance for vacancy and operating expenses lower than those testified to by petitioner, the assessor determined a net economic income value of $50,754. Applying a twelve percent capitalization rate, he valued the property at $423,000.

The assessor also considered the market approach. He examined several comparable sales to determine selling price per unit. He felt that the property is located in the Lansing "hot spot," the only area of rapid development in the city. He visited all the comparables, and regarded most as very similar to Southwind Apartments in terms of their lack of amenities. After making the necessary adjustments to five comparables, the assessor

concluded that the property's value was $440,000. He made no adjustments for unit size, apparently concluding that the comparable apartments were the same. Two of the comparable sales were not within Lansing city limits.

The assessor visited the property in the summer of 1982, but did not look at the inside of the property until December 29, 1982, after he completed his appraisal report. He examined a one-bedroom and a two-bedroom apartment, both vacant. They appeared to be in a "little better condition" than the building's exterior, which he described as "in need of attention." He did not examine the appliances. Both units were smaller than the average equivalent apartment in Lansing.

The assessor's visit did not change his mind about the TCV he had determined. The assessor knew of the 1979 land contract sale. He suggested that, as far as he knew, the $355,000 may have been fair market value at the time the property was first sold in 1979.

The Tax Tribunal ruled that the second land contract sale, which occurred seven months after the 1982 tax day, should be considered to support the tribunal's valuation conclusion. On February 6, 1985, the tribunal issued an opinion and judgment in which it affirmed the 1982 and 1983 assessments and the TCV of $421,600.

Subsequently, petitioner appealed from the tribunal's decision to this Court. This Court issued an opinion in which it reversed and remanded to the tribunal for further consideration in light of this Court's opinion. *First City Corp v Lansing,* unpublished opinion per curiam of the Court of Appeals, decided April 29, 1986 (Docket No. 83224). The Court held that remand was necessary because the tribunal failed to set forth the basis for its conclu-

sions of law which precluded this Court from determining whether the tribunal's decision was supported by competent, material and substantial evidence and free of error of law or the adoption of wrong principles. This Court directed the following matters to be addressed on remand:

(1) What evidence has been reviewed?

(2) A finding as to the most appropriate method of valuation under the circumstances. The tribunal must make its own finding of true cash value in arriving at its determination of a lawful property assessment.

(3) Specifically, what weight, if any, was given to the two land contract sales?

(4) Whether the income approach is more suitable than the market approach under the facts of this case.

(5) What effect, if any, the city assessor's post-inspection appraisal had upon his true cash value determination under the market approach.

(6) The possible effect of functional obsolescence upon the valuation approach which the Tax Tribunal ultimately adopts.

On January 12, 1987, the tribunal issued its decision on remand. On remand, the tribunal affirmed the original assessments. From this decision, petitioner appeals raising three issues.

First, petitioner contends that the tribunal did not comply with this Court's April 29, 1986, opinion directing it to inquire whether there was competent, material and substantial evidence to support its decision. We disagree.

The standard of review for Tax Tribunal decisions in property tax valuation cases is limited. When fraud is not alleged, the question is whether the Tax Tribunal committed an error of law or adopted a wrong principle. This Court accepts the

factual findings of the tribunal as final, provided that they are supported by competent, material and substantial evidence. Const 1963, art 6, § 28; *Antisdale v Galesburg,* 420 Mich 265, 277; 362 NW2d 632 (1984); *Xerox Corp v Oakland Co,* 157 Mich App 640, 647; 403 NW2d 188 (1987). A proceeding before the Tax Tribunal is de novo. MCL 205.735(1); MSA 7.650(35)(1). The burden of proof is on the taxpayer to establish the TCV of his property. MCL 205.737(3); MSA 7.650(37)(3).

Petitioner contends that the tribunal's decision on remand does not comport with this Court's April 29, 1986, opinion. We do not agree. In order to facilitate appellate review, MCL 205.751; MSA 7.650(51) and MCL 205.726; MSA 7.650(26), the latter of which incorporates MCL 24.285; MSA 3.560(185) of the Administrative Procedures Act, require the tribunal to provide a concise statement of facts and conclusions of law. *Plymouth Twp v Wayne Co Bd of Comm'rs,* 137 Mich App 738, 756; 359 NW2d 547 (1984).

On remand, the tribunal set forth supplemental findings of fact and conclusions of law. In arriving at its conclusions of law, the tribunal set forth the evidence which it reviewed in rendering its decision. The tribunal reviewed the 1979 land contract sale and the contract price, the 1983 land contract and the contract price, the 1983 settlement agreement whereby the Robbinses quitclaimed the property to the Fowlers with a promissory note in the amount of $21,000, petitioner's income approach statement, which included the actual income and expenses for the property for 1981 with a TCV figure of $230,766, and respondent's December 31, 1981, and December 31, 1982, appraisal reports.

In addition, the tribunal considered all three methods of valuation. The tribunal concluded that the market approach was the most appropriate

method under the circumstances to measure the present value of the future benefits of the ownership of the property due to the availability of sales data of similar properties. Petitioner's income approach was considered to be flawed because it used actual income versus economic income. Petitioner's income approach considered property taxes as an expense item as opposed to inclusion in the capitalization rate. Potential gross income is usually estimated at comparable market rent levels when the occupancy terms consist of short-term leases of five years or less. The tribunal also indicated that it considered the two land contracts, the postinspection appraisal and petitioner's income approach and stated its reasons for ascribing little weight to these items in reaching its conclusions. Based on the foregoing, the tribunal's decision was supported by competent, material and substantial evidence and it complied with this Court's April 29, 1986, opinion.

Next, petitioner alleges that the tribunal adopted the wrong method of valuation and thereby committed an error of law. Specifically, petitioner complains of the tribunal's use of the market rather than the income approach in determining the property's TCV.

It is the duty of the tribunal to make an independent determination of TCV, utilizing an approach which provides the most accurate valuation under the circumstances of the individual case. *Antisdale, supra,* p 277. "Cash value" means "usual selling price," meaning the price which would be obtained at a private sale rather than at a forced sale. MCL 211.27; MSA 7.27. "True cash value" and "fair market value" are synonymous. *CAF Investment Co v State Tax Comm,* 392 Mich 442, 450; 221 NW2d 588 (1974).

Generally, there are three accepted methods of valuation: the capitalization-of-income approach (income method), the cost-less-depreciation approach (cost method), and the market approach. *Antisdale, supra,* pp 276-277. In the instant case, we believe the Tax Tribunal properly selected the market approach as the most accurate method. This method was utilized due to the availability of sales data of similar properties. If the appraisal method is acceptable and reasonably related to fair market valuation, the method is an acceptable indicator of the TCV of the real property. *CAF, supra,* p 450, n 2. In this case, petitioner's proofs did not establish the TCV since it offered two land contracts and unverified income and expense information for 1981 and only estimates for 1982. Thus, the tribunal's method was appropriate under these circumstances.

Finally, petitioner alleges that the tribunal erred by not considering functional obsolescence in the valuation of the property. We disagree. Our careful review of the tribunal's decision indicates that the tribunal specifically addressed this matter. The tribunal indicated that the comparable properties, from the sale of which a valuation had been reached, were constructed from 1966 to 1973. The tribunal stated that this comparability of age and quality inherently has recognized functional obsolescence with the sales comparison method and further supports the market approach as the proper method of valuation. Thus, we find no error.

Affirmed.